# THE PEOPLE OF THE STATE OF CALIFORNIA v. FENTON TOMLINSON.

PURPOSE OF THE STATUTE AGAINST FORGERIES.—The purpose of the statute against forgeries is to protect society against the fabrication, falsification, and the uttering, publishing, and passing of forged instruments, which, if genuine, would establish or defeat some claim, impose some duty, create some liability, or work some prejudice to another in his rights of person or property.

IDEM—REQUISITES OF INDICTMENT FOR.—To constitute forgery, the forged instrument must be one which, if genuine, may injure another; and it must appear from the indictment charging the offense that such is its legal character, either from its recital or description of the instrument itself; or, if that does not show it to be so, then by the averment of matter *aliunde* which will show it to be of that character.

IDEM.—An indictment against T. for forging and uttering an instrument in writing with intent to defraud J. and C., merely recited the instrument charged to have been forged, without alleging any facts *aliunde* adding to its face—which instrument, from aught appearing on its face, was a *nudum pactum*: *Held*, that a demurrer to the indictment, on the ground that it did not state facts sufficient to constitute a cause of action, was well taken.

INDICTMENT—DISJUNCTIVE AND CONJUNCTIVE AVERMENTS.—Where the statute enumerates several acts disjunctively, which, separately or together, shall constitute the offense, the indictment, if it charges more than one of them, which it may do, and in the same count, should do so in the conjunctive; and the indictment will be held bad on demurrer when such acts are stated in the disjunctive. But this rule has no application where the words used disjunctively in the statute are synonymous.

APPEAL from the County Court of Humboldt County.

The following is a copy of the indictment in this case:

"The above named defendant, Fenton Tomlinson, is accused by the Grand Jury of the County of Humboldt, by this indictment, of the crime of forgery and counterfeiting, the same being a felony committed as follows: The said Fenton Tomlinson, in a certain action depending in the District Court of the Eighth Judicial District, for Humboldt County aforesaid, wherein the said Fenton Tomlinson was plaintiff, and Jerry Inman and Archibald Campbell were defendants, at the said County of Humboldt, on the 7th day of January, in the year 1867, did falsely, feloniously, wilfully, knowingly and unlawfully, utter, publish, and pass, or

attempt to pass, a certain false, forged, and counterfeit contract in writing, as a true and genuine contract of said Inman & Campbell, and of the tenor and effect following, to wit:

" 'EUREKA, May 10th, 1866.

" 'The undersigned, for himself and A. Campbell, now engaged as partners in the business of cutting and hauling logs on the logging claim near Arcata, known as the Tomlinson claim, do hereby agree with Fenton Tomlinson, for whom we are now so engaged in the business of logging, to commence getting rails, and otherwise assist in labor, money, or materials, for which we are to make no charge against F. Tomlinson—the above named labor, money, or materials, to be furnished for the purpose of building a rail track or car on the Tomlinson claim, for our use in the getting of logs; we also agree to not charge F. Tomlinson for board at any time that he may be on the above claim, nor to charge for boarding any men he may employ for the purpose of getting the railroad or car ready for operation; we also agree to deliver into the slough, below the tidegate, all the logs now on hand, and belonging to F. Tomlinson, amounting in all to one hundred and seventy-six logs, a large number of which are yarded around and near the landings. We further agree, that if they are not so delivered at the time we give up the business of logging on said claim, then F. Tomlinson shall charge one hundred and fifty dollars in coin, and retain the same from the proceeds of any logs we may have delivered, or that may yet be remaining back, as soon as they shall be delivered; we also agree to put on a team, and sufficient number of men, as soon as the track shall be furnished with a car; and we also agree that when we quit putting in logs, under our present agreement, we will deliver up to F. Tomlinson, in as good condition as it was when we received it, all the tools, rafting booms, anchors, ropes, boats, trucks, car, and eight oxen; we also agree to give F. Tomlinson the right to re-enter into full possession of all the premises and team at any time when, through lack of energy

or neglect, or inability on our part, the work shall not be carried on to advantage or profit.  It is further agreed, that all logs shall be properly rafted before being delivered to where the steam can take them in the bay, and all logs not so delivered on the first day of November next, shall be counted at four dollars per thousand feet, in the slough; and we further agree, that for all bills for goods furnished by F. Tomlinson, or by any other persons, for the which said Tomlinson has become responsible, or for any damages for destruction of property belonging to said Tomlinson, he may charge the same to us in gold coin.

' *Witness:* J. STARK.        JERRY INMAN.'

" By producing said false, forged, and counterfeit contract, in writing, in evidence, in the said action then and there depending between the said Fenton Tomlinson, plaintiff, and the said Jerry Inman and Archibald Campbell, defendants, with the intent then and there to prejudice, damage, and defraud the said Jerry Inman and Archibald Campbell, defendants as aforesaid, he, the said Fenton Tomlinson, defendant herein, well knowing the said false, forged, and counterfeit contract in writing to be false, forged, and counterfeit, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of California."

The defendant appealed.

The other facts are stated in the opinion of the Court.

*Geo. Cadwalader*, for Appellant.

The contract alleged to have been uttered is void, no consideration being expressed and no mutuality apparent. (1 Pars. on Cont. 353–357; Addison on Cont. 19.)  Forging or uttering such an instrument is not criminal.  (2 Bishop's Crim. Law, Secs. 499, 503, 506, 511; 8 Barb. 560; 9 Cowen, 778; 3 Gray, 441; 34 Vt. 501; 8 O., N. S., 630.)

· 64

If the instrument be of doubtful validity, the indictment will be held bad, unless it sets out such extrinsic matters as will enable the Court to see that the instrument would be valid if genuine. (2 Bishop's Crim. Law, Sec. 512.)

*Jo Hamilton,* Attorney General, for the People.

By the Court, Sanderson, J.:

The defendant was indicted under the statute against forgeries, for "uttering, publishing, passing, or attempting to pass," a certain forged instrument in writing, with intent to defraud Jerry Inman and Archibald Campbell. The instrument is set out in the indictment, and denominated a contract. The defendant demurred to the indictment upon the grounds, first, that it does not state facts sufficient to constitute the crime charged, for the reason that upon its face the instrument is null and void in law, and no extrinsic facts by which it can be made operative and effectual in law for any purpose, as against Inman and Campbell, or either of them, are averred; second, that the indictment is not certain and direct, the offense being charged in the alternative. The demurrer was overruled and a trial had, which resulted in a conviction. Several points were made and exceptions taken during the trial, which, in view of the conclusion we have reached upon the demurrer, we shall find no occasion to consider.

The purpose of the statute against forgeries is to protect society against the fabrication, falsification, and the uttering, publishing, and passing of forged instruments, which, if genuine, would establish or defeat some claim, impose some duty, or create some liability, or work some prejudice in law to another in his rights of person or property. Hence, without much conflict, if any, it has been held from the outset that the indictment must show that the instrument in question can be made available in law to work the intended fraud or injury. If such appears to be the case upon the face of the instrument, it will be sufficient to set it out in the indict-

ment; but if not, the extrinsic facts, in view of which it is claimed that the instrument is available for the fraudulent purpose alleged in the indictment, must be averred. If the indictment merely sets out an instrument which is a nullity upon its face, without any averment showing how it can be made to act injuriously, or fraudulently, by reason of matter *aliunde,* no case is made. This rule is so well settled by the precedents, that we do not feel called upon to discuss it upon principle. (*Rex* v. *Knight,* 1 Salk. 375; 1 Lord Raym. 527; *Regina* v. *Marcus,* 2 Carr. & Kir. 356: *People* v. *Shall,* 9 Cowen, 778; *People* v. *Harrison,* 8 Barb. 560; *State* v. *Briggs,* 34 Vt. 501; *Commonwealth* v. *Ray,* 3 Gray, 441; *Barnum* v. *The State,* 15 Ohio, 717; *Clarke* v. *The State,* 8 Ohio St. 630.) These cases establish the doctrine that, to constitute forgery, the forged instrument must be one which, if genuine, may injure another, and that it must appear from the indictment that such is its legal character, either from the recital or description of the instrument itself, or, if that does not show it to be so, then by the averment of matter *aliunde,* which will show it to be of that character.

There is nothing in the case of *The People* v. *Frank,* 28 Cal. 507, which is opposed to this doctrine. Following the lead of English cases, we there held that, to complete the offense of forgery, it was not necessary that the forged paper should appear to have been stamped. The grounds of the distinction is, that the stamp constitutes no part of the instrument, and the want of it does not, therefore, render the instrument absolutely null in law, if otherwise valid, and it may, therefore, be made available for the purpose intended without the stamp. (*Hallock* v. *Jaudin & Co.,* 34 Cal. 167.)

The contract, so called, set out in the indictment, purports to have been made and executed by Inman alone, acting for himself and copartner, Campbell. It is not signed by the defendant. It contains several promises; but it not only expresses no consideration for any of them, but expressly provides that some of them shall be performed without

charge. It contains matter, it is true, which indicates that there may be some other agreement between Inman and Campbell on the one side and the defendant on the other, which, taken with it, might or might not show it to be a valid instrument, if genuine, by which some liability could be cast upon Inman at least, or his rights in some way prejudiced. But what the character of that agreement is, is not stated, and it is therefore impossible to say whether it would have the effect to render the instrument in question valid if genuine. Therefore, for aught that appears upon the face of the instrument, the promises and undertakings are all on one side. On the part of the defendant there is no promise or undertaking whatever, either to pay money, transfer property, release a claim, or perform an act. It is not a negotiable mercantile paper; it has no seal, and expresses no consideration. It is, therefore, from aught that appears in the indictment, a *nudum pactum*, and, therefore, utterly ineffectual in law for any purpose. Of such an instrument, upon its face, as we have seen, forgery cannot be predicated; and it is not pretended that any matter *aliunde*, adding to the face of the instrument, is alleged in the indictment.

The remaining objection taken by the demurrer relates to the use of the word " or," instead of " and," in the charging part of the indictment, which is in the following words: " * * * did falsely, feloniously, wilfully, knowingly, and unlawfully utter, publish, and pass, *or* attempt to pass," etc. The language of the statute defining the offense is: " shall utter, publish, pass, *or* attempt to pass," etc.

Where the statute enumerates several acts disjunctively, which separately or together shall constitute the offense, the indictment, if it charges more than one of them, which it may do, and that, too, in the same count, should do so in the conjunctive; as for instance: " did utter, publish, pass, *and* attempt to pass," etc. (*People* v. *Ah Woo*, 28 Cal. 205; *People* v. *Frank*, 28 Cal. 513.) And it has been accordingly held that indictments containing disjunctive allegations, as that he murdered *or* caused to be murdered, forged *or* caused to

be forged, burned *or* caused to be burned, sold spirituous *or* intoxicating liquors, conveyed *or* caused to be conveyed, were bad for uncertainty. (2 Hawk. Chap. 35, Sec. 58; *Rex* v. *Stocker*, 1 Salk. 342; *People* v. *Hood*, 6 Cal. 236; *Com.* v. *Grey*, 2 Gray, 501; *Rex* v. *Stoughton*, 2 Str. 900.) In *The United States* v. *Potter*, 6 McLean's C. C. 186, however, it was held, that " cutting *or* causing to be cut " was not fatal.

But this rule, that the conjunctive form of averment must be adopted, does not apply to cases where the words of the statute are synonymous, (*State* v. *Ellis*, 4 Mo. 474,) for, where such is the case, there is but one act described. The words " utter " and " publish," in the law of forgery, are synonymous, for the meaning of both is " to declare or assert, directly or indirectly, by words or actions," that the forged instrument is genuine. Thus, to offer a forged bank note in payment, is both to utter it and to publish it. To complete the offense of uttering and publishing, it is not necessary that the note should be passed. Hence " to pass " is not synonymous with " uttering " and " publishing; " nor is " attempting to pass " synonymous with " passing." (*Commonwealth* v. *Searle*, 2 Binney, 338.)

Our conclusion is, that the Court below erred in not sustaining the demurrer upon both grounds.

Judgment reversed and cause remanded, and ordered that the remittitur issue forthwith.

Mr. Justice CROCKETT expressed no opinion.