## 7800

## STATE v. WEBSTER.

1. FORGERY.—He who presents to an express company an order for a package of liquor, knowing the consignee had not requested him to get it or had not given him the order to get it, but that another person had given him such order and representing to the express company that the consignee sent the order, which he knew was false, is guilty of forgery.

2. APPEAL.—Error in admission of evidence not shown to have been prejudicial will not be considered.

Before J. E. McDONALD, Special Judge, Anderson, March, 1910.    Affirmed.

Indictment against George Webster for forgery. Defendant appeals.

*Messrs. Martin & Earle,* for appellant, cite: *No intention to defraud:* 24 L. R. A. 3; 19 Cyc. 1380; 8 Am. St. R. 70; 1 Am. Cr. L. 225; 5 Am. Cr. R. 239; 28 L. R. A. 127; 24 L. R. A. 33.

*Solicitor P. A. Bonham,* contra.    Oral argument.

March 3, 1911.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    This is an appeal from the sentence, imposed upon the defendant, for uttering a forged instrument of writing.

The third count of the indictment, under which the defendant was convicted, charges that he did "wilfully utter and publish as true a certain false, forged, and counterfeited writing, and instrument of writing, commonly called an order, of the tenor as follows: 'Belton, S. C., Nov. 13th, 1909. Please let this man have my express, oblige, yours truly, Eliot Jefferson;' he, the said George Webster, then and there well knowing the same to be forged, with intent

to defraud Southern Express Company, a corporation, and Eliot Jefferson."

There was testimony tending to show that Steve Webster, a brother of the defendant, ordered two gallons of whiskey, to be sent from Virginia to Eliot Jefferson, at Belton, S. C.; that Ebb Webster, another brother, at the request of Steve Webster, wrote the alleged forged instrument; that Steve and Ebb Webster requested George Webster, the defendant, to present the said order, to the express company for the package; that the defendant stated to the agent of the express company that Eliot Jefferson had sent the order for the whiskey, although the defendant knew such statement to be false; that this false statement induced the agent, to deliver the package to the defendant, who carried it to Steve Webster; that Steve Webster paid for the liquor, and the express charges for transportation.

The defendant appealed upon the following exceptions:

1. "That his Honor erred, in not directing a verdict of not guilty, upon the third count of the indictment, upon the ground that there was no evidence that the act therein charged was done with intent to defraud.

2. "That his Honor erred, in not directing a verdict of not guilty, upon the third count, upon the ground that there was no evidence that the act was done wilfully, or with guilty knowledge.

3. "That his Honor erred, in refusing motion for a new trial, upon the ground that there was no evidence, or intent to defraud.

4. "That his Honor erred, in refusing motion for new trial, upon the ground that there was no evidence, that the act was done wilfully, and with guilty knowledge.

5. "Because his Honor erred, in refusing to grant a motion for a new trial, upon the ground that the evidence makes no case, for violation of the forgery statue, but shows a palpable attempt to violate the dispensary law.

6. "Because his Honor erred, in ruling that the witness, Ebb Webster, could not go into the details of a conversation with George Webster, that would show the information that defendant had, in regard to the instrument in question, and that would bear upon the question of wilfulness and guilty knowledge; said testimony being competent for that reason."

All the exceptions except the sixth will be considered together.

There are a few general principles, which it may be well to state, before applying the facts.

In order to constitute forgery, by uttering or publishing a forged instrument of writing, three important factors are requisite: 1. It must be uttered, or published, as true or genuine. 2. It must be known, by the party uttering or publishing it, as false, forged or counterfeited. 3. It must be with intent to prejudice, damage, or defraud another person. *State* v. *Murray,* 72 S. C. 508, 52 S. E. 189.

"The purpose of the statute against forgeries, is to protect society against fabrication, falsification, and the uttering, publishing, and passing of forged instruments, which if genuine, would establish or defeat some claim, impose some duty, or create some liability, or work some prejudice in law to another, in his right of person or property." *People* v. *Tomlinson,* 35 Cal. 503; *State* v. *Cordray,* A. & E. Ann. Cases (Mo.) 1110.

"It is a well settled rule at common law, that an instrument may be the subject of forgery, though it does not in fact, work any legal injury upon the person, whose name is forged." *People* v. *Abeel,* 3 A. & E. Ann. Cases (N. Y.) 287, note.

"The writing need not be such, as if genuine, would be legally valid. If it is calculated to deceive and intended to be used for a fraudulent purpose, this is enough." 13 A. & E. Enc. 1093.

"As the offense consists in the mere intention, it is not necessary, that any one should have been actually injured or defrauded, by the forged writing. It is enough that it may probably or possibly be done." 13 A. & E. Enc. 1085.

"It is no defense to a prosecution for forgery, that the person committing it, was, or considered himself justly entitled to what he would obtain, by means of the forgery." 13 A. & E. Enc. 1084.

"Forgery may be committed of any writing, which if genuine, would operate as the foundation of another man's liability, or evidence of his right. It is sufficient if the instrument forged, supposing it to be genuine, might have been prejudicial." 19 Cyc. 1380.

"Where goods were received by a common carrier for transportation, and their possession then demanded by the agent of the shipper's mortgagee, after condition broken, but the carrier declined to surrender the possession, and, after retaining them until next day, then shipped the goods to their destination, the carrier is not liable to the mortgagee." (Syllabus.) *Kohn* v. *Ry.*, 37 S. C. 1, 16 S. E. 376.

In that case Mr. Chief Justice McIver used this language: "It seems to us, that the whole case turns upon the question, whether a carrier, resting under very stringent obligations to his bailor, is bound to assume the burden, where a third person makes a demand upon him, for goods entrusted to him for transportation, not enforced by legal process, of showing not only that such third person is the rightful owner, but is also entitled to the immediate possession of the goods. It seems to us, that common justice would require, that such burden should be assumed by the claimant, who is most likely to have the means of meeting it, and not upon the carrier, who cannot be supposed to know anything, about the real ownership of the goods, and has a right to assume, that the person from whom he received possession of the goods, was such rightful owner, posses-

sion of personal property, being evidence of title. · The most that could be properly required of the carrier, would be to hold the goods, notifying his bailor of the demand, which had been made upon him, and let the claimant contest with the bailor, the question of ownership."

Concurring in said opinion, Mr. Justice McGowan said: "It seems to me, that when a common carrier is entrusted with property for transportation, his first responsibility is to the person, who has entrusted him with the property; and, upon claim of the property by a third party, that he should not be required, at his risk, to judge between the parties, as to the ownership of the property. He should, however, always and at once yield to the force of legal process, which intervenes and takes the property, thus relieving the carrier from the responsibility of being judge in the matter."

Not only was Eliot Jefferson the consignee, but at the time the package was delivered to the defendant, by the express company, the *legal* title was in him, and had been vested in him, by the buyer, who had ordered the whiskey to be sent to him. Therefore, the person who paid for the whiskey, and ordered it to be sent as aforesaid, had, at most, only an *equitable title*. Under such circumstances, Eliot Jefferson alone had the right to demand the delivery of the package, and the effect of the alleged forged order, was to deprive the express company of the right, to make the proper delivery. If the delivery had been made to Eliot Jefferson, it would only have been necessary, for the express company to show such delivery, in order to escape liability; but when the alleged forged order induced it, to deliver the whiskey to the defendant, the burden was cast upon it, to show that the *legal* owner had not been thereby damaged. Thus materially and prejudicially changing the status of the express company, by imposing upon it an additional liability, and casting upon it a burden, which otherwise would not have existed.

The order was also calculated to affect the rights of Eliot injuriously.

In order to constitute forgery, it is not essential, that the writing is calculated, to affect another's right of *property* injuriously.  It is sufficient if it may injure another in his *personal* rights.  At the time the writing was uttered, the question had not been determined by the Supreme Court, whether a person had the right to keep liquors in his possession, for his personal use, and the Circuit Judges differed in opinion, as to such right.  In his argument, the appellant's attorney says: "that the Websters plainly used Jefferson's name, in order to avoid the dispensary law."  Steve Webster admitted upon the stand, that the liquor in question, was taken from his possession by the police, and that he was fined fifty dollars for its unlawful transportation.

If the order had been genuine, it was calculated to place Eliot Jefferson, in the same category; and might have subjected him to confiscation of the whiskey, on the ground that it was contraband, also to fine and imprisonment for keeping it in unlawful possession, or transporting it in contravention of the statute.

These exceptions are therefore overruled.

The last exception cannot be sustained, for the reason that even if there was error, it has not been made to appear that it was prejudicial.

Appeal dismissed.