[Crim. No. 1448. Fifth Dist. June 21, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD PAGE HARRIS, Defendant and Appellant.

## COUNSEL

Stanley P. Berg, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, and Arnold O. Overoye, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**GARGANO, J.**—By information filed in the Superior Court of Kern County, appellant, Richard Page Harris, was accused of issuing two checks totaling more than $100 in violation of section 476a of the Penal Code, a felony; section 476a provides for the punishment of: "Any person who for himself . . . , willfully, with intent to defraud, makes or draws or utters or delivers any check, or draft or order upon any bank . . . for the payment of money, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer . . . has not sufficient funds in, or credit with said bank . . . , for the payment of such check, draft or order and all other checks, drafts or orders upon such funds then outstanding, in full upon its presentation, although no express representation is made with reference thereto, . . . ."

After jury trial, the jury returned a verdict finding appellant guilty of violating section 476a as charged in the information; appellant was sentenced to state prison for the term prescribed by law, and he has appealed from the judgment. His main challenge is against the sufficiency of the evidence to support the *felony* conviction.

On February 16, 1972, appellant opened a checking account with a branch of the United California Bank in Bakersfield; he used the name D. J. Sands and gave his address as 4415 Columbus Street, Bakersfield, California, and deposited $210 in the account. Appellant made no arrangement with the bank regarding overdrafts on the checking account.

On the following day, appellant went to the bank to deposit a $2,200 check in his checking account; the check, bearing the signature of a Mrs. Martha Smith, was payable to the order of D. J. Sands and was drawn on the Toronto-Dominion Bank of Harrow, Ontario, Canada. Appellant

asked for $1,100 in cash but was told that he could not have the money at that time; the operations officer explained that if appellant would leave the check with the bank, it would be discounted on the following day and he could have his money then. Appellant decided not to deposit the check and left; before leaving, he withdrew $200 from the checking account, reducing the balance in the account to $10.

A few minutes later, appellant went to the Broadway Department Store which was located nearby and purchased a sports coat for $68.25; he paid for the coat with a check drawn on his checking account at the United California Bank; the check was signed by appellant under the alias D. J. Sands and gave his address as 4415 Columbus; it was later determined that no one by the name of Richard Page Harris or D. J. Sands resided at that address.

After purchasing the coat, appellant walked to the jewelry department and selected a ring; he offered to pay for the ring with a check, but the offer was refused. Appellant then proceeded up the escalator to the credit department on the third floor. In the meantime, a security officer, who had been following appellant, called the credit department and warned the attendant against cashing a check for appellant; he also called the police.

At the credit office, appellant handed Granell Irwin, the credit manager, a check in the amount of $500 and asked her to cash it. This check also was drawn on the United California Bank and was signed by D. J. Sands; however, the space for inserting the name of the payee had been left blank. Ms. Irwin showed the check to a store executive, and when the executive refused to cash it, appellant took the check and left the store. He was followed by Detective Roger Ellis of the Bakersfield Police Department who had responded to the security officer's call.

Detective Ellis approached appellant as appellant exited from a telephone booth near the store's parking lot. The detective identified himself and asked appellant if he would accompany the officer to the United California Bank; appellant agreed. After talking to the bank's operations officer, Ellis placed appellant under arrest and transported the suspect to the city jail where he was searched; the $2,200 check drawn on the Toronto-Dominion Bank and the $500 check appellant attempted to cash at the credit department of the Broadway Department Store were found on his person.

From the jail, Detective Ellis went to room 104 of the Holiday House Motel where appellant and his wife, Maidie Eva Harris, were staying under the name of Mr. and Mrs. R. Gibson; the officer knocked on the door, and

his knock was answered by Mrs. Harris. Later, Ellis returned to the motel room, and with Mrs. Harris' consent, searched the room; he found four checks issued by banks located in various parts of the country, and a checkbook issued by the Toronto-Dominion Bank of Harrow, Ontario, Canada; through an imprint, it was determined that the $2,200 check found in appellant's possession had been written while it was attached to the checkbook found in the motel room; it also was established that the Toronto-Dominion Bank of Harrow, Ontario, Canada, did not carry a checking account under the name of Martha Smith.

At the trial, a handwriting expert testified that appellant was the person who signed the register at the Holiday House Motel under the name of Mr. and Mrs. R. Gibson; it was the expert's opinion that appellant was the man who wrote the $68.25 check he used to pay for the sports coat and the $500 check found in his pocket when he was searched at the police station.

■ Appellant's attack on the sufficiency of the evidence centers on the instrument he attempted to cash at the credit department of the Broadway Department Store. He relies on sections 3104, 3110 and 3111 of the Commercial Code to insist that the instrument was not a "check" within the proscription of section 476a of the Penal Code because it did not designate a payee. These sections deal specifically with commercial paper and are a part of the negotiable instrument law of this state; they provide in essence that a "check" is not negotiable unless it is payable to order or to bearer and that the directive "pay to the order of ———" does not make the "check" negotiable.

A check is essentially commercial paper, and it has been stated repeatedly that it is a direction to the bank upon which it is drawn to pay a sum certain to the person named therein. (*People* v. *Norwood,* 26 Cal.App.3d 148, 154 [103 Cal.Rptr. 71]; *Pullen* v. *Placer County Bank,* 138 Cal. 169, 172 [66 P. 740, 71 P. 83]; *Williams* v. *Braun,* 14 Cal.App. 396, 398 [112 P. 465].) However, we do not find it necessary to answer the question as to whether the commercial paper law is controlling in a prosecution for a violation of section 476a of the Penal Code. While appellant handed Granell Irwin, the credit manager, an instrument which did not specify a payee, the instrument was signed and dated and contained the amount payable. All Granell Irwin had to do to make it a check in the commercial sense and to place it into circulation as a fully negotiable instrument under the civil law was to fill in the name of the Broadway Department Store in the blank space; and because appellant handed Ms. Irwin the instrument in that condition and asked her to cash it, he impliedly authorized her to complete it. (*People* v. *Gorham,* 9 Cal.App. 341, 343 [99 P. 391].) By necessity,

appellant offered to put a *fully completed* check into circulation, and by doing so he uttered a check within the ambit of the penal law.

Section 476a of the Penal Code does not proscribe merely the making of a check with the intent to defraud and with knowledge that there are insufficient funds and/or credit with the bank upon which it is drawn to pay the amount specified; under the section, it is also a crime to utter a check under those conditions. ■ It is almost the universal rule that a forged instrument is uttered not only when it is put into circulation but when there is an offer to do so. (*People* v. *Tomlinson*, 35 Cal. 503, 509; *Pollock* v. *People*, 166 Colo. 340 [443 P.2d 738]; *Jackson* v. *State*, 248 Ind. 579 [228 N.E.2d 3]; *State* v. *Greenlee*, 272 N.C. 651 [159 S.E.2d 22]; *Hill* v. *State* (Okla. Crim.) 266 P.2d 979.) ■ Reason dictates that the same rule applies to checks uttered in violation of section 476a. The fact that the name of the payee in the instrument appellant tried to cash was never filled in is not the critical issue. The gravamen of the offense involved in this case was appellant's offer to put a *fully completed* and negotiable check into circulation with knowledge that he did not have sufficient funds or credit with the bank upon which it was drawn to pay the amount specified in the instrument.

We reject appellant's remaining contentions for reversal.

■ Appellant alleges that the incriminating evidence found in his motel room was the product of an unlawful search and seizure. Appellant did not make a motion to suppress the evidence prior to trial as required by section 1538.5 of the Penal Code, nor did he raise the issue at the preliminary hearing; he objected to the evidence for the first time at the trial. Since the record does not show that appellant did not have the opportunity to make the motion earlier or that his counsel was unaware of the grounds before trial, the trial court correctly overruled the objection. (*People* v. *Triggs*, 8 Cal.3d 884, 887, fn. 2 [106 Cal.Rptr. 408, 506 P.2d 232]; *People* v. *Superior Court (Edmonds)*, 4 Cal.3d 605, 609-611 [94 Cal.Rptr. 250, 483 P.2d 1202]; *People* v. *Smith*, 30 Cal.App.3d 277, 280-281 [106 Cal.Rptr. 272].) Furthermore, appellant's wife, who was living in the motel room with appellant, consented to the search of the room, and her consent was sufficient. (*People* v. *Smith*, 63 Cal.2d 779, 799 [48 Cal.Rptr. 382, 409 P.2d 222]; *In re Lessard*, 62 Cal.2d 497, 504 [42 Cal.Rptr. 583, 399 P.2d 39]; *Beach* v. *Superior Court*, 11 Cal.App.3d 1032, 1035 [90 Cal.Rptr. 200].)

Appellant insists that the court erred in failing to instruct the jury *sua sponte* on the limited purpose for the admission of the prosecution's evidence

concerning the $2,200 check drawn on the Toronto-Dominion Bank of Harrow, Ontario, Canada. (*People* v. *Williams,* 11 Cal.App.3d 970, 978 [90 Cal.Rptr. 292].) The omission does not require reversal in this case. The evidence of appellant's guilt of the crime for which he was convicted was decisive, and it would stretch the imagination to believe that the jury would have reached a different verdict if the instruction had been given. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

■ Appellant relies on *People* v. *Hess,* 10 Cal.App.3d 1071, 1077-1078 [90 Cal.Rptr. 268, 43 A.L.R.3d 643], to argue that "it was error for the trial court to order appellant to submit handwriting exemplars and have those exemplars received into evidence." The *post litem motam* rule to which appellant alludes applies only to a handwriting specimen offered by the person making it as a standard of comparison with the disputed writing for the purpose of corroborating his testimony. (*People* v. *Najera,* 8 Cal.3d 504, 513 [105 Cal.Rptr. 345, 503 P.2d 1353]; *People* v. *Villarino,* 7 Cal.App.3d 56, 67 [86 Cal.Rptr. 338]; *People* v. *Sauer,* 163 Cal.App.2d 740, 745 [329 P.2d 962]; 29 Am.Jur.2d, Evidence, § 810, p. 903.) In forgery and similar prosecutions, *post litem motam* exemplars of the defendant may be used, as in this case, by the prosecution to establish an essential element of the crime charged (*People* v. *Najera, supra,* 8 Cal.3d 504, 513; 29 Am.Jur.2d, Evidence, § 811, p. 904); and the taking of a defendant's handwriting specimen for this purpose does not violate his privilege against self-incrimination. (*Gilbert* v. *California,* 388 U.S. 263, 266 [18 L.Ed.2d 1178, 1182, 87 S.Ct. 1951]; *People* v. *Hess, supra,* 10 Cal.App.3d 1071, 1076-1077.)

The judgment is affirmed.

Brown (G. A.), P. J., and Franson, J., concurred.

A petition for a rehearing was denied July 19, 1974, and appellant's petition for a hearing by the Supreme Court was denied August 14, 1974.