No. 48,197

STATE OF KANSAS, *Appellee,* v. ROY NELSON POWELL a/k/a RAY NELSON POWELL, *Appellant.*

(551 P. 2d 902)

Opinion filed June 12, 1976.

*Richard T. Merker,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, argued the cause and was on the brief for the appellant.

*Dale E. Hartung,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Margaret W. Jordan,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Appellant, Roy Nelson Powell, has perfected this appeal from a jury conviction on a felony charge of giving a worthless check ( K. S. A. 21-3707). The offense charged was committed against Thompson Electric, Inc., of Shawnee Mission, Kansas.

The state's evidence consisted primarily of circumstantial evidence. Frank Thompson, part owner of the electric company, testified that on July 9, 1974, an unidentified man telephoned Thompson Electric, Inc., said he was a representative of Powell Material Company and requested price information on various types of electrical wire. Thompson quoted prices and the unidentified man placed an order for wire. It should be noted that Powell Material Company is a sole proprietorship owned by appellant. Subsequently Thompson filled out an invoice to Powell Material Company for the goods which had been ordered of the value of $93.22. The invoice and goods were placed in the display area of the store. Neither Thompson nor his employees recalled who picked up the wire. However, on July 10, Thompson found the invoice on his desk marked paid and a check attached for $93.22 signed by appellant.

Thompson testified he processed the checked through his company's checking account and it was subsequently returned by the drawee bank marked "insufficient funds". A seven day bad check notice was mailed on August 7, 1974, to the address of Powell Material Company by registered mail. The notice informed the ap-

pellant that he had seven days after receipt of the notice to pay the check and that failure to pay would result in the filing of a complaint. The notice letter was returned to Thompson on August 10. A post office notation on the envelope stated that the mail box at that address had been discontinued. Thompson then attempted to contact appellant by telephone. Failing in that, Thompson then visited appellant and confronted him with the worthless check. Appellant told Thompson that the check was good and assured him that it would be paid if it were resubmitted to the bank. Thompson visited the bank and tendered the check. Payment was again refused on the ground of insufficient funds.

On September 6, 1974, appellant was charged with violating K. S. A. 21-3707 and subsequently convicted by a jury. On December 6, 1974, appellant filed a motion for new trial. It was denied. On the latter date the state notified appellant that it intended to invoke the habitual criminal act to enhance his sentence. On January 9, 1975, appellant was sentenced to a prison term of one to ten years under K. S. A. 21-4504 (1) (a).

On appeal appellant contends the trial court erred in admitting evidence which disclosed that during June, July, August, and September, 1974, appellant wrote numerous worthless checks on this and other bank accounts totaling some $9,000.00. The ledger sheets of the bank upon which the check was drawn indicated that at no time between July 2, and August 30, was the balance in appellant's account sufficient to cover the $93.22 check. Appellant sought, unsuccessfully, to suppress this evidence prior to the commencement of trial.

The state argued that under K. S. A. 60-455 ledger sheets which reflected that defendant had written bad checks both before and after the subject transaction were admissible to prove issues in dispute including intent, knowledge, design and plan. The court ruled this evidence admissible.

Appellant's argument regarding the alleged inadmissibility of similar offenses is difficult to follow. He intimates that the prejudicial nature of the evidence so outweighed its probative value that it should not have been admitted.

This court has recognized that a trial court must employ a balancing procedure by weighing the probative value of evidence against its tendency to prejudice the jury where the state seeks to introduce evidence of other crimes. Sound judicial discretion must be employed and such evidence should not be admitted where it has no

real probative value and does not tend to prove a fact substantially in issue. (See K. S. A. 60-455; *State v. Bly*, 215 Kan. 168, 175, 176, 523 P. 2d 397; and *State v. Gunzelman*, 210 Kan. 481, 502 P. 2d 705, 58 A. L. R. 3d 522.)

In the present case the probative value of the evidence was weighed in a hearing conducted out of the presence of the jury. The defense raised material issues on intent, plan, knowledge, identity, and absence of mistake, which issues were contested in this case. Appellant presented an alibi witness at trial who claimed that appellant was in Utah or Colorado when the crime was committed. Appellant also submitted evidence which suggested that the $93.22 check was passed by some unidentified individual who had stolen it from appellant's business premises. Evidence that numerous worthless checks had been written against appellant's account over a four month period, which included the date of issuance of the check in question, tended to refute the stolen check defense. This evidence also tends to indicate that appellant knew his bank account contained insufficient funds to cover the check and that he intended to defraud Thompson Electric, Inc. Similar offenses committed in the community by appellant on or near the date of the present crime were relevant to prove intent to defraud, plan, knowledge, identity and absence of mistake. Under these circumstances the probative value of the evidence substantially outweighs the prejudicial nature of the documents that reflect the commission of other similar offenses during the period in question.

Appellant argues that evidence of other offenses was improperly admitted by the trial court in violation of K. S. A. 60-447. That statute provides:

"Subject to section 60-448 when a trait of a person's character is relevant as tending to prove his conduct on a specified occasion, such trait may be proved in the same manner as provided by section 60-446, except that (*a*) evidence of specific instances of conduct other than evidence of conviction of a crime which tends to prove the trait to be bad shall be inadmissible, and (*b*) in a criminal action evidence of a trait of an accused's character as tending to prove his guilt or innocence of the offense charged, (*i*) may not be excluded by the judge under section 60-445 if offered by the accused to prove his innocence, and (*ii*) if offered by the prosecution to prove his guilt, may be admitted only after the accused has introduced evidence of his good character."

Appellant reads this statute as limiting the type of evidence which may be admitted under 60-455 and argues that evidence of the other offenses in this case are inadmissible because no convictions had been obtained for the other offenses.

Conviction is not a prerequisite to the admission in evidence of other similar offenses pursuant to K. S. A. 60-455 if the requirements for admission are otherwise fulfilled. (*State v. Anicker*, 217 Kan. 314, 536 P. 2d 1355; *State v. James*, 217 Kan. 96, 535 P. 2d 991; *State v. Lamb*, 215 Kan. 795, 530 P. 2d 20.)

Appellant misinterprets K. S. A. 60-447. The final provision of that statute allows evidence of prior convictions in a criminal case to rebut evidence of good character first introduced by the defense. Thus while a defendant is protected by 60-455 from prosecution attempts to prove a present crime by showing criminal predisposition, that protection is waived as to prior convictions involving dishonesty and false statement when a defendant puts his character in issue in an effort to support his credibility or disprove his participation. (See K. S. A. 60-421; *State v. James*, supra, at p. 97; and 4 Vernon's Kansas Statutes Annotated, Code of Civil Procedure, § 60-447, p. 359.)

The appellant did not testify at this trial and he did not introduce evidence of character or reputation. His credibility was not an issue and neither K. S. A. 60-421 nor K. S. A. 60-447 applies.

In a prosecution for issuing a worthless check under K. S. A. 21-3707 bank ledger sheets tending to show that the bank account on which the check was drawn contained insufficient funds to cover said check and various other checks issued before, on and after the date of the issuance of the check in question are relevant and admissible in evidence to establish the charge. The ledger sheets are not inadmissible merely because they tend to establish additional crimes by the defendant involving the issuance of other worthless checks during the same period of time. Evidence otherwise relevant in a criminal prosecution is not rendered inadmissible because it may show a crime other than that charged. (*State v. Calvert*, 211 Kan. 174, Syl. 6, 505 P. 2d 1110.)

Appellant contends he is not responsible for giving the worthless check because the payee's name was misspelled (Thompon Electric) and the payee endorsed the check with its name correctly spelled (Thompson Electric, Inc.) when it presented the check for payment. The endorsement which appears on the check is "Thompson Electric, Inc. by Frank A. Thompson, Pres". Appellant claims that the check as endorsed was not properly payable when presented to the drawee bank. He concludes that upon these facts he cannot be held criminally responsible for issuing an insufficient fund check.

The gravamen of the offense of giving a worthless check as proscribed by K. S. A. 21-3707 is the act of putting a negotiable check into circulation with knowledge that sufficient funds or credit are not on deposit to pay the amount specified in the instrument. The offense is complete when such an instrument is issued with intent to defraud, and it is not necessary to show that the check was presented for payment at the drawee bank in order to prove the crime. Reviewing the nature of a similar offense in *State v. Haremza,* 213 Kan. 201, 515 P. 2d 1217, this court made the following observation:

". . . A careful study of 21-3707 (1) shows clearly that the refusal of the bank to pay a check on presentation for payment is not one of the elements of the offense. The statutory elements of the offense are that the defendant issued a check, that the defendant knew there were insufficient funds in the bank at the time the check was issued and that the defendant did so with intent to defraud. When these elements are established the crime is complete. . . ." (pp. 208, 209.)

(Also see 32 Am. Jur. 2d, False Pretenses, § 79, p. 224, and 35 C. J. S. False Pretenses, § 21, p. 828.)

Other jurisdictions have held that it is not necessary that a check or draft used to obtain possession of money or merchandise be complete in form in order to constitute the crime of passing a worthless check if the instrument can be negotiated by the payee upon proper endorsement. (See *People v. Harris,* 39 Cal. App. 3d 965, 114 Cal. Rptr. 892; *State v. Campbell,* 70 Idaho 408, 219 P. 2d 956; *King v. State,* 308 S. W. 2d 40 [Tex.Cr.App. 1957]; *State v. Donaldson,* 14 Utah 2d 401, 385 P. 2d 151.)

In this case, although a bank officer testified that the drawee bank considered the endorsement insufficient to support payment, the bank refused payment to Thompson because appellant's account contained insufficient funds. Despite the misspelling of the payee's name, the instrument was a valid and negotiable check if properly endorsed by the payee as provided in K. S. A. 84-3-203 of the Uniform Commercial Code. K. S. A. 84-3-203 provides:

"Where an instrument is made payable to a person under a misspelled name or one other than his own he may indorse in that name or his own or both; but signature in both names may be required by a person paying or giving value for the instrument."

The crime was complete once the worthless check was issued and placed in circulation by appellant with intent to defraud Thompson.

Appellant next contends that the trial court erred in giving an instruction which defined circumstantial evidence and discussed

the weight to be afforded such evidence in determining guilt or innocence.

In *State v. Wilkins,* 215 Kan. 145, 523 P. 2d 728, it was held:

"An instruction on circumstantial evidence, which cautions the jury that a defendant should not be found guilty unless the facts and circumstances proved exclude every reasonable theory of innocence or states that the jury cannot convict the defendant on circumstantial evidence unless the circumstances exclude every reasonable hypothesis of his innocence, is unnecessary when a proper instruction on 'reasonable doubt' is given; overruling *State v. White,* 211 Kan. 862, 508 P. 2d 842, and all other decisions in which this court has required a special instruction on circumstantial evidence." (Syl. 6.)

Reaching this conclusion in *Wilkins* this court emphasized that it is the province of the jury to weigh evidence and a trial court should not by its instructions attempt to stress the comparative weight or strength of any particular type of evidence. (See also *State v. Murray,* 200 Kan. 526, 437 P. 2d 816.)

The situation in this case is similar to that in *State v. Holloway,* 219 Kan. 245, 547 P. 2d 741. In *Holloway* it was held that although the term "reasonable doubt" should not be further defined in jury instructions, the giving of an instruction defining reasonable doubt does not result in prejudicial error.

It is the province of the jury to weigh the evidence and a trial court should not by its instructions attempt to stress the comparative weight or strength of any particular type of evidence. An instruction that the jury should not find the defendant guilty on circumstantial evidence alone unless the facts and circumstances exclude every reasonable theory of innocence need not be given, but the giving of such an instruction is generally beneficial to the defendant and no reversible error accrues to a defendant-appellant if such instruction is given.

Appellant's next contention is that the court erred by instructing on the statutory presumption to prove an intent to defraud. The court instructed the jury:

"In any prosecution against the maker or drawer of a check, payment of which has been refused by the bank on account of insufficient funds, the making, drawing, issuing or delivering of such check shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or on deposit with, such bank, providing such maker or drawer shall not have paid the holder thereof the amount due within seven days after notice has been given to him that such check has not been paid by the bank.

"The word 'notice', as used herein, shall be construed to include notice to the person entitled thereto given orally as well as notice given to such person in writing. Notice in writing shall be presumed to have been given when

deposited as restricted matter in the United States mail, addressed to the person to be charged with notice at his address as it appears on such check, draft or order.

"As used in this instruction, 'prima facie evidence' is evidence that on its face is true, but may be overcome by evidence to the contrary."

The foregoing instruction properly explains the statutory presumption set forth in K. S. A. 21-3707 (2). Appellant cites *State v. Haremza,* supra, in which this court examined this statutory presumption and said:

". . . In order for the presumption to come into play the facts which must be proven are as follows: (1) The defendant must have made or drawn the check; (2) payment must have been refused by the drawee on account of insufficient funds; (3) after notice was given to the defendant that such check was not paid, the defendant failed to pay the holder of the check the amount due thereon within seven days after notice. . . ." (213 Kan. p. 206.)

There was evidence introduced to establish the three requirements.

Appellant argues that the evidence in the lower court did not establish that he issued the check or that he received notice it had been dishonored. A review of the evidence in the record contradicts appellant's claim. It is undisputed that Thompson contacted appellant personally and told him payment had been refused. He did not deny that the check was his when he was confronted with it. In addition evidence was introduced to establish that appellant did sign the check as maker. Evidence was further introduced at trial which disclosed the unsatisfactory condition of appellant's checking account when the check was issued. The statutory presumption set forth in K. S. A. 21-3707 (2) is simply a permissive rule of evidence and does not add to the elements of the offense of giving a worthless check. (*State v. Haremza,* supra, at p. 209.) There was substantial evidence in this case that appellant intended to defraud Thompson apart from the statutory presumption. The giving of the instruction was proper.

Appellant next contends the evidence below was insufficient to support the jury's verdict and that the lower court should have sustained his motion for acquittal. On appellate review this court will not overturn the decision of the jury where the facts and circumstances disclosed by the evidence support a reasonable inference of guilt. (*State v. Soverns,* 215 Kan. 775, 529 P. 2d 181; *State v. Austin,* 209 Kan. 4, 495 P. 2d 960. *State v. Trotter,* 203 Kan. 31,

453 P. 2d 93.) The evidence here is clearly sufficient to sustain the conviction.

Finally appellant argues that the state improperly invoked the habitual criminal act (K. S. A. 21-4504) to increase his sentence without proper notice and hearing.

In *State v. Myers*, 215 Kan. 600, 527 P. 2d 1053, it is said:

"Due process of law requires that a defendant have a reasonable notice that the habitual criminal law may be invoked. (*Jackson v. State*, 204 Kan. 841, 466 P. 2d 305). The state is not required to give an accused notice of its intention to invoke the habitual criminal act prior to trial or prior to submission of a case to a jury. Reasonable notice is all that is required. (*State v. Pappan*, 206 Kan. 195, 477 P. 2d 989). The purpose of requiring such notice is to afford the defendant time to prepare his defense and show cause why the act should not be invoked (*State v. Bell*, 205 Kan. 380, 469 P. 2d 448). No particular form of notice is necessary and such notice may be waived (*Lieser v. State*, 199 Kan. 503, 430 P. 2d 243)." (p. 605.)

In this case it appears that appellant received notice of the state's decision to invoke the habitual criminal act thirty-four days prior to sentencing. Appellant had ample opportunity to present evidence in mitigation of the increased sentence, but he did not do so. The sentence imposed should not be disturbed.

The judgment is affirmed.