(644 P.2d 473)
No. 52,871

STATE OF KANSAS, *Appellee,* v. ALVIN L. GOWLER, *Appellant.*

Petition for review denied July 21, 1982.

Opinion filed May 6, 1982.

*Mary L. Stuckey,* of Speer, Austin, Holliday, Lane & Ruddick, Chartered, of Olathe, for the appellant.

*Larry McClain,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Dennis W. Moore,* district attorney, for the appellee.

Before SWINEHART, P.J., ABBOTT, J., and HARRY G. MILLER, District Judge Retired, Assigned.

MILLER, J.: Defendant Alvin Gowler has appealed from his conviction and sentence for conspiracy to commit murder in violation of K.S.A. 21-3401 and 21-3302.

Gowler was charged separately, along with Judy P. Bishop, with conspiring together and with Kenneth Ogle to procure the death of Richard Jones, Bishop's former husband. Over the objections of both Gowler and Bishop, the two cases were consolidated for trial, and the jury found both defendants guilty.

The evidence presented at trial resulted in differing versions of what had transpired. Richard Jones, the intended victim, testified that he and Judy Bishop were divorced in March of 1979 after a somewhat turbulent marriage of four years, and that during that time she had twice attempted to kill him, once by trying to run

him down with her car and another time by firing at him with a loaded gun. Although the divorce was granted in March of 1979, a property settlement between the parties remained unresolved through January of 1980.

The State's principal witness was Kenneth Ogle, the alleged coconspirator, who was granted immunity from prosecution. His testimony was that he lived with Judy Bishop from May of 1979 to January of 1980, and that she had repeatedly indicated to him that she would like to "do away with" Jones or "get rid of him." Ogle finally agreed to see if he could find someone to help her.

In October or November of 1979, Ogle asked defendant Gowler, with whom he worked, if he knew of someone who could "do away with somebody permanently," and Gowler advised that he knew some people who could do it. Subsequently, on December 1, 1979, Gowler called Ogle at Bishop's home and advised that he had made contact with the boys who would do the killing, and that it would cost $500 front money and $5,000 for the actual killing. Bishop, upon being advised, agreed to the terms and gave Ogle $500 which was delivered to Gowler.

Ogle further testified that sometime in mid-December Bishop gave him $5,000 to be forwarded to Gowler upon request. Although Gowler was aware of its availability, he never made demand for the payment of the $5,000.

According to Ogle, the killing was to occur sometime in mid-January, 1980. At Bishop's request and because of her concern about an approaching court date involving a property settlement, the date was advanced to the weekend of January 4-5, 1980. The killing did not occur, however, and in response to inquiries from Ogle, Gowler gave an excuse and suggested the possibility of another date.

On January 23, 1980, Ogle moved out of Bishop's house, returned the $5,000, and told Bishop he wanted nothing more to do with the killing of Jones. After withdrawing from the conspiracy, Ogle was informed by Gowler that Bishop had contacted him about continuing the effort to have Jones killed. Gowler and Bishop met in a motel parking lot on January 25, 1980. This meeting was recorded on video tape by officers of the Shawnee Police Department. Bishop later told Ogle she had given Gowler another $500.

On February 4, 1980, Gowler was questioned by Johnson

County Sheriff's officers. He immediately informed Ogle about the investigation and told Ogle to tell the detectives that they were just "ripping her off for money." Ogle testified that this was the first time Gowler had indicated that the murder plot was only an effort to steal money from Bishop.

Judy Bishop testified and categorically denied all charges. According to her, she gave the $5,000 to Ogle so that he could start in the used-car business, and the $500 given to Ogle was given to him for Christmas shopping and to pay for procuring information which she needed in a pending child custody battle with another former husband. She admitted meeting Gowler on January 25, 1980, and admitted paying him $500 at that time, but stated that it was for information which she needed in the custody proceedings. She denied paying money to anyone for the purpose of having Richard Jones killed.

A detective with the Johnson County Sheriff's Office identified a video tape which was made in a motel parking lot on January 25, 1980. It showed a meeting between Bishop and Gowler which lasted about thirty minutes. Shown on the tape was an envelope being placed on the dash of the Gowler car and being left there.

The killing was never attempted and no credible reasons were ever given by Gowler for the plan's failure. Gowler did not testify in his own behalf, relying instead on the insufficiency of the State's evidence. Motions for judgment of acquittal were timely interposed on that basis and were overruled.

One of the grounds of error asserted by Gowler on appeal is that the trial court erred in overruling his motions for judgment of acquittal. He earnestly contends that there is no evidence in the record to show that he ever intended to kill anyone. To the contrary, he asserts, the most that the evidence indicates is that he was trying to steal money from Bishop. He notes that there was testimony confirming that even Bishop and Ogle began to suspect that defendant was trying to steal money from Bishop.

The standard for review of the sufficiency of evidence on appeal in a criminal case is stated in *State v. Voiles*, 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979), as follows:

"In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty

beyond a reasonable doubt? Following *Jackson v. Virginia,* 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781 (1979)."

Here, Ogle testified that he asked Gowler to find someone to kill Jones and that Gowler agreed to do so and accepted money given for that purpose. The jury chose to believe Ogle. When his testimony is considered with all the other evidence in the case, we find that there was sufficient evidence to support the jury's verdict.

Gowler further assigns as error that the trial court erred in joining the two cases for trial. His contention is that as a result he was unduly prejudiced (a) by the introduction in evidence of prior criminal acts of codefendant Bishop, and (b) by repeated comments on his failure to testify by Bishop's counsel.

The testimony of Jones, the intended victim, that Bishop had tried to kill him on two prior occasions was offered pursuant to K.S.A. 60-455. The rules for receiving such testimony in evidence are stated in *State v. Myrick & Nelms,* 228 Kan. 406, 420, 616 P.2d 1066 (1980), as follows:

"The rules regarding the admission of evidence of prior crimes or civil wrongs were stated in *State v. Johnson,* 222 Kan. 465, Syl. ¶ 2, 565 P.2d 993 (1977):

" 'In ruling on the admissibility of evidence of a prior conviction under 60-455, a district court must (1) determine it is relevant to prove one of the facts specified in the statute, (2) determine that fact is a disputed material fact - *i.e.,* that it is substantially in issue, and (3) balance the probative value of the prior conviction evidence against its tendency to prejudice the jury.' See *State v. Treadwell,* 223 Kan. 577, 581, 575 P.2d 550 (1978); *State v. Faulkner,* 220 Kan. 153, Syl. ¶ 1, 551 P.2d 1247 (1976).

"Conviction is not a prerequisite to introduction of a prior offense under K.S.A. 60-455. *State v. Henson,* 221 Kan. 635, 644, 562 P.2d 51 (1977); *State v. Powell,* 220 Kan. 168, Syl. ¶ 1, 551 P.2d 902 (1976)."

As a preliminary to receiving such evidence, the trial court held a hearing outside the presence of the jury and ruled that it was admissible as relevant to proving motive and intent. It was submitted to the jury with proper limiting instructions and we find no error.

A more difficult question is that presented by the contention of the defendant that he was prejudiced by the repeated comments on his failure to testify by Bishop's counsel in final arguments to the jury. Timely objection to these comments were made by Gowler's counsel and a mistrial requested, both of which were overruled. No admonition was given to the jury.

In *Griffin v. California,* 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct.

1229 (1965), the Court held that comments by a judge or prosecutor on the defendant's failure to testify in his own defense could cause the jury to infer guilt from such silence and therefore violate his Fifth Amendment right not to be compelled to be a witness against himself. The Kansas Supreme Court followed the *Griffin* rule in *State v. Reeves,* 224 Kan. 90, 577 P.2d 1175 (1978), and the legislature has codified the rule in K.S.A. 60-439, which provides:

"If a privilege is exercised not to testify or to prevent another from testifying either in the action or with respect to particular matters, or to refuse to disclose or to prevent another from disclosing any matter, the judge and counsel may not comment thereon, no presumption shall arise with respect to the exercise of the privilege, and the trier of fact may not draw any adverse inference therefrom. In those jury cases wherein the right to exercise a privilege, as herein provided, may be misunderstood and unfavorable inferences drawn by the trier of the fact, or may be impaired in the particular case, the court, at the request of the party exercising the privilege, may instruct the jury in support of such privilege."

The principles precluding comment by a judge or prosecutor on the accused's failure to testify has been extended to prohibit such comments by counsel for a codefendant. *DeLuna v. United States,* 308 F.2d 140 (5th Cir. 1962). See generally, Annot., Comment on Accused's Failure to Testify, by Counsel for Codefendant, 1 A.L.R.3d 989.

Such comments by a prosecutor, while error, do not necessarily require reversal. In *State v. Hamilton,* 222 Kan. 341, 345, 564 P.2d 536 (1977), the court stated:

"Misconduct of counsel does not necessarily require a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial. [Citations omitted.] . . . . In applying the Kansas harmless error rule (K.S.A. 60-2105) to a federal constitutional error the court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such a belief beyond a reasonable doubt. [Citations omitted.] Where the evidence of guilt is of such direct and overwhelming nature that it can be said the misconduct of counsel could not have affected the result of the trial, such misconduct is harmless error."

Again, in *State v. Dill,* 3 Kan. App. 2d 67, 589 P.2d 634 (1979), this court held that such a comment by a prosecutor is not prejudicial per se, but the reviewing court must be able to declare a belief that it was harmless error beyond a reasonable doubt. We now hold that the same standard of review is applicable when the comment is made by codefendant's counsel.

The State contends that the rationale of *DeLuna* is not appli-

cable in the present case because the defenses of Gowler and Bishop were not mutually antagonistic, and that the nature of the comments involved did not necessarily infer guilt from Gowler's silence.

A review of the evidence reveals that while the defenses of the two codefendants were not actually antagonistic, they were inconsistent with each other. Bishop contended that she gave $5,000 to Ogle to start a business and that she gave $500 to Ogle and to Gowler to procure evidence she needed in court. Gowler contended that no matter what Bishop intended, he had no intention of killing anyone.

It is defendant's contention that the jury could not believe him and also believe Bishop's testimony, and that the comments by Bishop's counsel on his failure to testify were such as to cast doubt on his defense.

We have reviewed the record, and given the evidence in this case we cannot say beyond a reasonable doubt that the comments made by Bishop's counsel could not have affected the result of Gowler's trial. We therefore find the error to be reversible error.

Reversed and remanded.