[Crim. No. 16216. In Bank. Dec. 19, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
PABLO BORJA NAJERA, Defendant and Appellant.

## COUNSEL

John M. Beede, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler and Edward A. Bergholdt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BURKE, J.**—Defendant was charged with robbery (Pen. Code, § 211); the information alleged that he was "armed with a deadly weapon, to-wit, a gun" during the offense. The jury returned a verdict of guilty on the robbery charge and found that defendant was armed with a gun at the time the robbery occurred. The judgment recites that defendant was convicted of robbery in the first degree and states that "Defendant was armed with a .22 Caliber Revolver." Defendant appeals, asserting various errors. He also

contends that the judgment of conviction should be modified to provide that Penal Code sections 3024,[1] 12022,[2] and 12022.5[3] are not applicable in this case. Although we agree with defendant's contention that the judgment should be so modified, we reject all of his other contentions.

The facts which led to defendant's arrest are as follows: The Hudson Oil Company in Stockton was entered and an armed robbery was committed by two men. A radio call was made to all police cars, reporting the incident and describing both robbers. Two police officers who heard the radio report, and were within seven blocks of the robbery scene, saw and followed a vehicle whose occupants answered the broadcast description. They stopped the vehicle, searched the three occupants and the car, found coins, currency, and a loaded revolver, placed the suspects under arrest and advised them of their constitutional rights.

The suspects were transported to the police station and placed in three separate cells. Mike Kersey, the service station operator and robbery victim, arrived at the police station to view the three suspects. The police made no suggestion to Kersey that the suspects to be viewed were the robbers. Defendant agreed to a confrontation with the victim.

Kersey had to step inside each cell to see the subject therein. He first looked at defendant's alleged accomplice whom he recognized immediately. Defendant was the second person he viewed, and Kersey thought he recognized him but had some initial reservations. Subsequently, Kersey walked back into the cell for a second look and positively identified defendant as the man who held the gun on him during the robbery. Defendant was never interrogated.

---

[1] Penal Code section 3024 prescribes certain *minimum* terms of imprisonment for offenders armed with a deadly weapon. Persons not previously convicted of a felony are subject to a two-year minimum term (subd. (a)), and prior felony offenders are subject to a four-year minimum (subd. (b)).

[2] Penal Code section 12022 prescribes certain *additional* terms of imprisonment for persons who commit or attempt to commit any felony while armed with a deadly weapon. A first conviction under section 12022 results in a prison term of not less than five nor more than ten years, in addition to, and upon expiration of, the term prescribed for the underlying felony. Subsequent convictions under section 12022 carry increased additional terms of imprisonment.

[3] Penal Code section 12022.5 prescribes certain *minimum additional* terms of imprisonment for persons who "use" a firearm in the commission or attempted commission of a robbery, assault with a deadly weapon, murder, rape, burglary, or kidnaping. A first conviction under section 12022.5 results in a minimum prison term of five years, in addition to, and upon expiration of, the term prescribed for the underlying felony. Subsequent convictions under section 12022.5 carry increased minimum additional terms of imprisonment. The section provides that its provisions shall apply "even in those cases where the use of a weapon is an element of the offense."

It was stipulated that if Sergeant Faselli were called as a witness he would testify that he obtained exemplars of defendant's signature after having obtained the consent of defendant and his counsel. John Jorgensen, a handwriting expert, testified that the signature on a conditional sales contract for a 1954 Chevrolet was written by the same person who wrote the exemplars. The vehicle being operated by the suspects at the time of arrest was a 1954 Chevrolet. Jorgensen further testified that the booking slips signed by defendant on October 7, and November 13, 1970, were both written by the same person who wrote the exemplars.

### 1. *Application of Penal Code Sections 3024, 12022, and 12022.5*

The People concede that the judgment in this case should be modified to provide that Penal Code sections 3024 and 12022 are not applicable, but that defendant was armed with a .22 caliber revolver for purposes of Penal Code section 1203, pertaining to probation. This result is compelled by recent cases of this court holding that the provisions of sections 3024 and 12022 (which provide for a minimum term of sentence and for additional punishment in certain cases where defendant was armed in a specified manner; see fn. 1, *ante*), are inapplicable where the defendant was found guilty of first degree robbery on the basis of the fact that he was armed (*People* v. *Williams,* 2 Cal.3d 894, 910-911 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Floyd,* 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862]).

On appeal, the People originally contended that the judgment should not be modified to exclude the minimum additional punishment provided by Penal Code section 12022.5 for robbery and certain other crimes if the defendant "used a firearm in the commission or attempted commission" of the offense.

At oral argument, however, the People stipulated that section 12022.5 was inapplicable and that the judgment herein should be so modified. In view of the fact that the lower courts have had some difficulty determining under what circumstances section 12022.5 properly may be applied, we choose to reach the issue in this case in spite of the People's stipulation.

Section 12022.5 by its express terms applies "even in those cases where the use of a weapon is an element of the offense." Thus, in a proper case, a defendant convicted of robbery in the first degree (by reason of being armed with a deadly weapon, Pen. Code, § 211a) may also be subject to the additional punishment provided in section 12022.5 for using a firearm, despite the holding of such cases as *People* v. *Floyd, supra,* 71 Cal.2d 879. (*People* v. *Chambers,* 7 Cal.3d 666, 671-672 [102 Cal.Rptr. 776, 498 P.2d 1024]; *People* v. *McDaniels,* 25 Cal.App.3d 708, 713-716 [102

Cal.Rptr. 444]; *People* v. *Henry,* 14 Cal.App.3d 89, 92-93 [91 Cal.Rptr. 841].) ██ ██ The question before us in the instant case is whether or not, by reason of the People's failure to request jury instructions covering that section, the People should be deemed to have waived the application of that section.[4]

The People took no steps whatever at trial to secure a verdict or judgment stating the applicability of section 12022.5. The People did request and receive an instruction directing the jury to determine whether or not defendant was armed with a deadly weapon (as defined in another instruction) at the time of the offense. However, the People failed to request an instruction under section 12022.5 directing the jury to find whether or not defendant "used" a firearm during the offense,. as that term is defined in cases cited above. Before we determine, however, whether the People have waived their right to have the question tried, we first must decide whether the question should have been tried by the jury, rather than by the trial judge.

It could be argued that the finding required to make section 12022.5 applicable is to be made by the trial judge rather than the jury, since there is no statute (such as'Pen. Code, §§ 969c and 1158a, with respect to the applicability of §§ 3024 and 12022) which commits these determinations to the jury. (See *People* v. *Harrison,* 5 Cal.App.3d 602, 609 [85 Cal.Rptr. 302].) ██ We think, however, that the better rule is set forth in *People* v. *Spencer,* 22 Cal.App.3d 786, 801 [99 Cal.Rptr. 681], quoting with approval the following language taken from the People's brief in that case: "Section 969c of the Penal Code provides for the right to a jury trial of allegations that a defendant was armed with a deadly weapon so as to bring him within the operation of Penal Code sections 3024 and 12022. The addition of Penal Code section 12022.5 in 1969 was not accompanied by an amendment of section 969c to include section 12022.5. However, in view of the California Constitution's guarantee of the right of jury trial (art. I, § 7), it would seem that this omission does not manifest a legislative

---

[4]As noted above, the information did not charge defendant with a violation of section 12022.5; instead, the information charged that defendant was *armed* with a deadly weapon, an allegation more appropriate to charging a violation of section 12022. The cases seem to be in conflict regarding the question whether such an allegation may support a finding that defendant *used* a firearm under section 12022.5. (Compare *People* v. *Washington,* 17 Cal.App.3d 470, 474-475 [94 Cal.Rptr. 882]. with *People* v. *Henderson,* 26 Cal.App.3d 232, 235-238 [102 Cal.Rptr. 670].) Although defendant has raised no objection to the adequacy of the information in this regard, it is clearly the better practice, in terms of giving defendant fair notice of the charges against him, to set forth in the information whether or not application of section 12022 or 12022.5 will be sought. (Cf. *People* v. *Flores,* 6 Cal.3d 305, 308-309 [98 Cal.Rptr. 822, 491 P.2d 406].) As *People* v. *Washington, supra,* asserts a contrary view, that case is hereby disapproved to that extent.

intent to exclude allegations under section 12022.5 from the class of cases in which there is a right to a jury trial." The court in *Spencer* concluded that the People's "concession is legally compelled." We agree.

"Issues of fact shall be tried in the manner provided in Article I, section 7 of the Constitution of this State [i.e., by a jury]." (Pen Code, § 1042; see *People* v. *Loomis* 27 Cal.App.2d 236, 239 [80 P.2d 1012].) Section 12022.5 therefore requires a jury determination of the factual question whether or not defendant used[5] a firearm in the commission of the underlying offense, unless defendant has waived a jury trial or has pleaded guilty. As defendant in the instant case did not waive a jury trial nor plead guilty, he was entitled to a jury determination of the matter, preceded by proper jury instructions regarding the meaning of section 12022.5. As explained above, the jury's finding that defendant was armed with a deadly weapon at the time of the offense was insufficient to establish his use of a firearm.

An identical situation occurred in *People* v. *Spencer, supra,* 22 Cal. App.3d 786, wherein the information charged defendant with robbery and with being armed with a deadly weapon, both at the time of the offense and at the time of his arrest for that offense. The People failed to request jury instructions on the question of *use* of a firearm under section 12022.5, and the jury returned a verdict of guilty of robbery in the first degree, and a finding that defendant was armed when the offense occurred (though not when arrested). On appeal, the court rejected defendant's various claims of error, but also denied the People's request that the cause " 'be remanded to permit the People the opportunity to try to a jury the allegation that appellant "used" a firearm within the meaning of Penal Code section 12022.5.' " The court reasoned that such a procedure would constitute a "piecemeal trial" requiring "the impanelment of a new and different jury and a trial in which the admissible evidence bearing upon the limited issue would be practically coextensive with that received at the plenary trial. . . . [Par.] It is our conclusion that the practical realities of the situation, combined with the valid arguments of appellant in opposition to an unprecedented bifurcation of a jury trial for the purpose of determining the limited issue of penalty, dictate the rejection of that procedure in

---

[5]A jury instruction was essential to define the statutory term "uses a firearm." As indicated in recent cases, one who is "armed" with a firearm does not thereby necessarily "use" it, although the word "use" does not require an actual discharge of the weapon. (See *People* v. *Chambers, supra,* 7 Cal.3d 666, 672-674; *People* v. *Washington, supra,* 17 Cal.App.3d 470, 474.) "Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies." (*People* v. *Chambers, supra,* p. 672.)

the circumstances of this case. *It seems not unreasonable to hold that the failure of the prosecution to request either the necessary jury instruction or the submission of the requisite special verdict should be taken as an indication that section 12022.5 has not been invoked."* (Italics added; 22 Cal. App.3d at p. 802.)

Prior to the stipulation referred to above, the People had urged us to disapprove *Spencer* and remand the cause to the trial court for a further jury trial on the applicability of section 12022.5. The People rely upon *People* v. *Washington, supra,* 17 Cal.App.3d 470, 474-475, and *People* v. *Henderson,* 25 Cal.App.3d 371 [101 Cal.Rptr. 129], wherein the Court of Appeal ordered remands to determine the issue of use of a firearm under that section. Both cases are, however, distinguishable.

In *Washington,* the trial was by the court, defendant having waived a jury trial. The court's judgment found defendant guilty of robbery in the first degree, and also found that defendant was armed with a deadly weapon when the robbery was committed. The Court of Appeal deemed the judgment "ambiguous" in that it could not be determined from its face whether defendant had been found to have "violated"[6] section 12022 or the more specific provisions of section 12022.5. The court concluded that "In view of the severity of the additional punishment compelled by section 12022.5 we think defendant is entitled to a specific finding in the judgment as to whether his conduct amounted to a violation of that section." (P. 477.) Accordingly, the court vacated the judgment and remanded the cause to the trial court "to make a specific finding of fact on the application of section 12022.5 to the conduct of this defendant and then enter judgment in accordance with its finding."[7] As noted in *People* v. *Spencer, supra,* 22 Cal.App.3d 786, the *Washington* case is distinguishable because in that case the defendant waved a jury trial. "In that situation the trial court could make the required specific finding on the record made at the trial— a relatively simple procedural process." (22 Cal.App.3d at p. 802.) *Spencer's* rationale, which we adopt, is that fundamental fairness forbids piece-

[6]The court thus appears to assume that sections 12022 and 12022.5 describe separate criminal offenses, rather than merely providing additional punishment for offenses in which a deadly weapon or firearm is involved. (See *People* v. *Henry, supra,* 14 Cal.App.3d 89, 92, suggesting that "section 12022.5 does not describe an offense" for purposes of the doctrine of double jeopardy and the prohibition against multiple punishment [Pen. Code, § 654]; see also *People* v. *Henderson, supra,* 26 Cal.App.3d 232, 237, fn. 4.)

[7]Justice Herndon, concurring in the opinion in *Washington,* was of the view that the only finding which, under the evidence in the record, reasonably could have been made, was that defendant used a firearm within the meaning of section 12022.5; accordingly, he would have remanded with directions to make that finding, along with the finding (required by *People* v. *Floyd, supra,* 71 Cal.2d 879) that sections 3024 and 12022 were inapplicable. (17 Cal.App.3d at pp. 477-478.)

meal jury litigation of the sort originally sought by the People herein; defendant should not have to undergo a second "trial" on the issue of penalty, especially since the People could have obviated such a procedure by timely measures during the first trial.

That rationale also furnishes a basis for distinguishing *People* v. *Henderson, supra,* 25 Cal.App.3d 371, involving a jury retrial of the section 12022.5 issue. In *Henderson,* as in the instant case and *Spencer,* the People failed to request a jury instruction regarding section 12022.5. The jury returned a verdict of guilty on counts of kidnaping and robbery, and also found that defendant was armed at the time of the robbery "within the meaning of Penal Code 12022.5 as contained in Count I of the Information. . . ."[8] The court recognized that, by reason of *Spencer* and *Washington,* section 12022.5 could not be made applicable to the existing verdict. Nevertheless, since the court had reversed and remanded the kidnaping count, the court deemed it proper to remand for a further finding regarding section 12022.5, evidently on the theory that since the case was to be retried in any event, such a remand would not involve the "piecemeal litigation" condemned in *Spencer.* Whether or not the court in *Henderson* was justified in remanding for a further jury proceeding on the issue of the applicability of section 12022.5 is a question we need not decide, for it is apparent that the decision furnishes no authority for a remand under the circumstances in this case. ■ We conclude that the People waived the application of section 12022.5 by failing to have the matter resolved at trial.

### 2. *Handwriting Exemplars*

Defendant claims the People laid no foundation that any of the handwriting exemplars examined by the expert were received from documents which defendant had signed or written prior to his being booked for the offense at issue.

The testimony in question was elicited on the issue of ownership of the vehicle in which defendant was a passenger, and which contained the money taken in the robbery, and the weapon used. For this purpose, the expert used two booking sheets, one of which was signed more than one month prior to the instant arrest, and the other signed on the morning of the arrest. The expert also used *post litem motam*[9] exemplars of defendant's

---

[8]The information in *Henderson* erroneously charged defendant with being "armed with a deadly weapon . . . within the meaning of Penal Code section 12022.5," rather than using the correct allegations ("used a firearm") under that section.

[9]Exemplars made after the commencement of the action, suit or litigation (Ballentine's Law Dict. (2d ed.) p. 989), or a signature writing made for the occasion. (*People* v. *Sauer,* 163 Cal.App.2d 740. 745 [329 P.2d 962].)

signature for comparison with the signature on the contract of sale of the vehicle in question. It was the expert's opinion all exhibits had been signed by the same person.

None of the cases relied upon by defendant suggests that it would be improper to use a *post litem motam* writing *against* the party who made it. The authorities do recognize the risk of chicanery or fraud by the maker of a writing made for the very purpose of being used as a standard of comparison; they acknowledge however, that " '[W]here the *opponent* chooses to demand and offer . . . a specimen [of the opposing party's handwriting]; he is the one who suffers by any unfairness, and if he chooses to take the risk, certainly the other party cannot object.' [Citations.]" *(People v. Villarino,* 7 Cal.App.3d 56, 67 [86 Cal.Rptr. 338]; see *People v. Sauer, supra,* 163 Cal.App.2d 740, 745 [" '. . . A signature or specimen writing that is made for the occasion and post litem motam may not be used for comparison by the party making it.' "]; *People v. Golembiewski,* 25 Cal.App.2d 115, 119 [76 P.2d 717]; 29 Am.Jur.2d, Evidence, § 810, pp. 902-904.) Thus, it has been generally held that a writing made out of court by a defendant in a criminal case, at the request of police officers, is admissible for purposes of comparison with a disputed writing, provided the exemplar was voluntarily made. (29 Am.Jur.2d, *supra,* § 811, and cases cited.)

In the instant case, defendant voluntarily gave the officers a sample of his handwriting. Accordingly, under the authorities cited above, the People's expert was properly permitted to testify that defendant's handwriting matched the signature on the conditional sales contract. ■ It further appears that the expert used two exemplars which were not *post litem motam;* consequently, even were it error to have used the two subsequent exemplars, it is likely that such error was harmless. *(People v. Sauer, supra,* 163 Cal.App.2d 740, 746.)

Finally, defendant failed to object at trial to the introduction of the expert's testimony for lack of proper foundation, and the issue may not be raised for the first time on appeal. (See *People v. Nicolaus,* 65 Cal.2d 866, 879 [56 Cal.Rptr. 635, 423 P.2d 787]; *People v. Peterson,* 251 Cal. App.2d 676, 680 [59 Cal.Rptr. 694].)

### 3. *Instructions on Specific Intent*

Defendant next contends that the trial court should have instructed the jury regarding the effect of circumstantial evidence upon proof of specific intent. In essence, the proposed instruction[10] would have permitted the jury

---

[10]This instruction (CALJIC No. 2.02) reads as follows: "The specific intent with which an act is done may be manifested by the circumstances surrounding its commission. But you may not find the defendant guilty of the offense charged in

to infer a specific intent to commit robbery from circumstantial evidence only if such evidence were irreconcilable with any other rational conclusion. As pointed out in *People* v. *Gomez,* 223 Cal.App.2d 572, 574 [35 Cal.Rptr. 823], the intent to steal is an element of the crime of robbery, and accordingly such an instruction must be given whenever the case against defendant rests wholly or substantially upon circumstantial evidence. (See also *People* v. *Bender,* 27 Cal.2d 164, 174-175 [163 P.2d 8].)

However, the court's error in failing to instruct the jury on this issue was not prejudicial under the circumstances in this case. As stated in *People* v. *Green,* 228 Cal.App.2d 437, 440 [39 Cal.Rptr. 612], "The instruction [on circumstantial evidence] could benefit appellant only if there were room for some 'rational conclusion' that he entered the homes with some intent other than to steal. Neither the evidence nor the argument to the jury remotely suggests any purpose except theft for the entry of the two houses. . . . The charge was defended and argued to the jury solely on the issue of identity. It was implicitly assumed that the intruder entered for the purpose of stealing. . . . The conclusion is inescapable that the jury, however fully instructed, could and would have found no motivation save theft for appellant's entries. We see no way in which the omitted instruction could have benefited appellant with the jury." (Accord, *People* v. *Gomez, supra,* 223 Cal.App.2d 572, 574-575.) ■ Similarly, in the instant case, the issue of identity was defendant's sole defense; no attempt was made to show that the person who robbed Kersey at gunpoint acted without the requisite specific intent to steal. Accordingly, any error in failing to instruct the jury regarding specific intent was harmless.

### 4. *Pre-indictment Identification*

Defendant next contends that the trial court committed prejudicial error in permitting the introduction of evidence of the pre-indictment identification of defendant by victim Kersey. Although defendant had been previ-

---

[Count . . . ] [this case] unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to . . . but are irreconcilable with any other rational conclusion.

"Also, if the evidence as to such specific intent is susceptible of two reasonable interpretations, one of which points to the existence thereof and the other to the absence thereof, you must adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to such specific intent appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

The note accompanying this instruction in CALJIC states: "This instruction is designed for use in a specific intent case in which the only element of the offense which rests substantially or entirely on circumstantial evidence is the element of specific intent."

ously advised of his right to counsel at all stages, he was not specifically informed that he had a right to counsel at this confrontation.

In *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], the court held that a defendant who was required to appear in a *post-indictment* lineup without the presence of counsel was confronted in violation of his Sixth Amendment rights, and that his subsequent in-court identification was erroneously admitted unless it could be shown that such identification had an origin independent of the illegal lineup; in the absence of a showing of independent origin, defendant's conviction should be reversed unless it was determined that the erroneous admission was harmless. In *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], the court vacated a judgment of conviction because evidence of the illegal post-indictment lineup identification had been introduced by the prosecution, such admission being per se erroneous, and held that the judgment should be reversed unless it were shown, upon remand, that the error was harmless.

In *Kirby* v. *Illinois,* 406 U.S. 682 [32 L.Ed.2d 411, 92 S.Ct. 1877], a plurality opinion by Justice Stewart, joined in by the Chief Justice and two other justices, declined to extend the *Wade-Gilbert* "per se exclusionary rule" to identification testimony "based upon a police station showup that took place before the defendant had been indicted or otherwise formally charged with any criminal offense." A fifth justice concurred in the result on the ground that he "would not extend the *Wade-Gilbert* per se exclusionary rule." ■ For purposes of the instant case, we may assume arguendo that *Wade-Gilbert* principles applied and that defendant was entitled to counsel at the pre-indictment confrontation with victim Kersey. (See *People* v. *Martin,* 2 Cal.3d 822, 828-830 [87 Cal.Rptr. 709, 471 P.2d 29] involving non-lineup identification by the victim based upon viewing defendant through a one-way mirror at the police station.)

The record indicates, however, that trial counsel failed to object to, or move to strike or suppress, the identification evidence offered at trial. It is now well established that the issue of the presence of counsel at lineup or showup confrontations cannot be raised for the first time on appeal. (*People* v. *Williams, supra,* 2 Cal.3d 894, 909; see *People* v. *Martin, supra,* 2 Cal.3d 822, 832, fn. 11.) As noted in *Williams,* had defendant objected to this evidence, the prosecution would have had the opportunity to show that defendant in fact was represented at the confrontation, or waived such representation. Moreover, the prosecution might have been able to show that Kersey's in-court identification of defendant had an origin independent of the confrontation at police headquarters. (*United States* v. *Wade, supra,* 388 U.S. 218.) Having concluded that defendant waived his right to raise

the *Wade-Gilbert* issue on appeal, we need not consider the People's further contention that the introduction of evidence regarding the pre-indictment identification was harmless error in view of the circumstantial evidence linking defendant to the crime charged.

### 5. *Adequacy of Trial Counsel*

■ Defendant contends he was denied effective assistance of counsel. Defendant alleges the following shortcomings of counsel: (1) Failure to object to the identification testimony; (2) failure to object to the admission of the handwriting exemplars; (3) failure to object to the court's refusal to instruct on circumstantial evidence relative to specific intent; and (4) failure to move for a new trial.

■ It is now well established that if trial counsel's lack of diligence or competence results in withdrawing a crucial defense from the case, reducing the trial to a farce or sham, the defendant has not had the "effective" assistance of counsel to which he is entitled under the Sixth Amendment. (*In re Saunders,* 2 Cal.3d 1033, 1041-1042 [88 Cal.Rptr. 633, 472 P.2d 921]; see *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

■ Counsel's failure to object with respect to the second and third matters set forth above cannot be considered to have withdrawn crucial defenses from the case, for as we have seen, the handwriting exemplars were properly admitted into evidence, and the circumstantial evidence instruction would not have aided defendant had counsel requested it. With respect to counsel's failure to object to the identification testimony or to move for a new trial, such omissions may well have been intentional, done for purposes of trial strategy.

Matters involving trial tactics are matters "as to which we will not ordinarily exercise judicial hindsight. [Citations.]" (*People* v. *Beagle,* 6 Cal.3d 441, 458 [99 Cal.Rptr. 313, 492 P.2d 1].) "In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel. [Citations.]" (*People* v. *Brooks,* 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383]; see *People* v. *Perry,* 271 Cal.App.2d 84, 112 [76 Cal.Rptr. 725].) The question whether to move for a new trial is considered a matter of strategy left to counsel to decide. (*People* v. *Bresin,* 245 Cal.App.2d 232, 240 [53 Cal.Rptr. 687].) And from our review of the record, it seems

likely that counsel's failure to object to the pre-indictment confrontation testimony was likewise tactical.

Certainly, nothing in the record indicates that counsel was unaware of the highly publicized *Wade-Gilbert* rules, which were four years old at the time of trial. Counsel may have determined that an objection to the out-of-court identification would be fruitless, and possibly alienate the jury, in light of the victim's positive in-court identification. Moreover, had an objection been made, it is likely that the trial court would have found that the in-court identification had an origin independent of the out-of-court confrontation, since the victim testified that he had no doubt at all that defendant was the man who held the gun and robbed him, having confronted defendant face-to-face for several seconds during the robbery. We conclude that we should not presume counsel's incompetence in the face of a silent record, since tactical considerations may have led counsel to act as he did. As stated in *People* v. *Davis,* 270 Cal.App.2d 841, 844 [76 Cal.Rptr. 242], involving a similar situation, "The choice of when to object or not is inherently a matter of trial tactics not ordinarily reviewable on appeal; failure to object does not necessarily indicate incompetence. [Citation.] We cannot say that, in the case at bench, the decision not to object to the lineup procedure was not a legitimate tactical decision."

The judgment in the instant case is modified by striking therefrom the phrase "Defendant was armed with a .22 Caliber Revolver" and by adding in lieu thereof the provision "At the time of the commission of the robbery defendant was armed within the meaning of section 1203 of the Penal Code and that the weapon was a .22 caliber revolver, but at the time of the commission of that offense sections 3024, 12022 and 12022.5 of the Penal Code were inapplicable." In all other respects the judgment as modified is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.