123 Cal.Rptr.2d 544 (2002)
101 Cal.App.4th 1
The PEOPLE, Plaintiff and Respondent,
v.
Marco VALADEZ, Defendant and Appellant.
In re Marco Valadez on Habeas Corpus.
No. D030982.
Court of Appeal, Fourth District, Division One.
August 9, 2002.
Ordered Not Officially Published October 23, 2002.[*]
Beatrice C. Tillman, San Diego, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Kyle Niki Shaffer and Steven T. Oetting, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[1]
BENKE, Acting P.J.

INTRODUCTION
Marco Valadez was found guilty of rape in concert, false imprisonment, oral copulation while acting in concert and unlawful sexual intercourse with a minor under 16 years of age. Various weapon allegations *545 were found true. Valadez was sentenced to a prison term of 24 years to life.[2] In the published portion of this opinion we conclude Valadez was denied due process because the information did not give notice that sentencing was sought pursuant to the "one strike" law (Pen.Code,[3] § 667.61) and we remand for resentencing. During the pendency of the appeal, Valadez filed a petition for writ of habeas corpus raising claims of ineffective assistance of counsel, which has been consolidated with the appeal.

FACTS

I. Prosecution's Case

In June 1996, 14-year-old Amanda E. was baby-sitting at the apartment of Linda Martinez. Around 2 a.m., Martinez, appellant, appellant's friend and codefendant Lorenzo Soltero[4] and several other persons returned to the apartment. They appeared to be drunk and high. Before returning home for the evening, Amanda went to the bathroom located between adjoining bedrooms. On her way out, appellant, Soltero and another man, Adam Palafox, confronted Amanda in a bedroom. Appellant was pounding a pipe wrench into the palm of his hand. Soltero approached Amanda, put his hands around her waist and told her to remove her pants. Thinking he was joking, Amanda laughed. When Amanda resisted, appellant threatened her and Soltero removed her pants.
Soltero raped Amanda. Appellant forced her to touch his penis and put it in her mouth. Amanda was afraid to fight back. She knew appellant and Soltero were gang members and had heard appellant, Soltero, Martinez and other persons in the apartment describe how they had attacked people for making them angry or "looking at them wrong." When Amanda told the men she was going to throw up, they allowed her to go to the bathroom. While in the bathroom, Amanda heard Martinez from the other bedroom say "they're in there pulling a train on that bitch" and then heard laughter. When Amanda returned to the bedroom, appellant pulled her toward him. Amanda convinced the men to let her go home.
Upon returning home, Amanda did not report the assault. Her mother noticed Amanda was upset and went to Martinez's apartment to find out what had happened. Amanda's mother argued with someone in Martinez's apartment and then returned home. Several minutes later, appellant and Soltero followed. Amanda's mother talked with appellant and Soltero in the kitchen. Soltero apologized to Amanda for "scaring" her. Amanda went to bed. She saw her mother get drug paraphernalia and rejoin appellant and Soltero in the kitchen. When Amanda got out of bed, appellant and Soltero were gone and there were drugs on the table.
Six months later, Amanda, who was pregnant, was called into the school counselor's office to discuss her home life. The counselor had visited Amanda's home the week prior and talked with her mother regarding Amanda's school absences. Amanda reported the rape to the counselor and agreed to file a complaint.
When contacted by the police, appellant denied knowing Amanda or ever having been in Martinez's apartment. Palafox, the man Amanda said was in the room *546 when she was attacked, testified he was not involved in the crime but did walk through the bedroom and saw Soltero pulling Amanda onto the bed while appellant was standing nearby. Palafox claimed he feared retaliation if he were to intervene or report the assault.
Amanda gave birth. DNA testing indicated a 99.91 percent certainty that Soltero was the father of the child.

II. Defense

Appellant did not testify but argued none of the events Amanda reported took place. He supported his claim by noting inconsistencies in the witnesses' testimony. Appellant also argued the rape could not have taken place as described because the position of the alleged actors was physically impossible. Appellant presented evidence that he had a marble surgically embedded in the foreskin of his penis prior to the date of the offense and it was noticeable whenever he had an erection. By implication, he could not have been involved in the rape because Amanda never testified she saw the unusual protrusion.
Soltero testified that he and Amanda had consensual sexual intercourse the night before the claimed incident but not the night of the alleged crime.
Appellant identified Amanda's desire to get back at Soltero and to escape from her mother's home as possible motivations for lying. He argued his friendship with Soltero made him a target.

DISCUSSION

I.-III.[*]

IV. One Strike Sentencing

Appellant contends he was denied due process because the information did not give notice that sentencing would be required under section 667.61, commonly referred to as the "one strike" law.

A. Background
Appellant was charged under sections 261, subdivision (a)(2)/264.1 [forcible rape in concert], with a special allegation under section 12022.3, subdivision (b) [use of a deadly weapon]. Under the one strike law, section 667.61, subdivision (b), requires a sentence of 15 years to life if a defendant is found guilty of section 261, subdivision (a)(2), and if the section 12022.3, subdivision (b), allegation is found true. (§ 667.61, subds.(b), (e)(4).) A term of 25 years to life is required pursuant to section 667.61, subdivision (a), if the defendant is convicted of certain enumerated sex crimes and if certain described circumstances are proved. (§ 667.61, subds.(a), (c), (d), (e).)
Section 667.61, subdivision (i), states: "For the penalties provided in this section to apply, the existence of any fact required under subdivision (d) or (e) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."
The amended information charged appellant with a violation of section 261, subdivision (a)(2), and alleged that in the commission of that offense he was armed with a deadly weapon within the meaning of section 12022.3, subdivision (b). While a verdict of guilt on the charged offense and a true finding on the armed allegation would require sentencing pursuant to section 667.61, subdivision (b), that section was unmentioned in the information.
Appellant was found guilty of the charged offense and the armed allegation was found true. The first mention of sentencing under the one strike law came in *547 the prosecution's post-trial sentencing memorandum.
As to the section 261, subdivision (a)(2), conviction, appellant was sentenced to an indeterminate term of 15 years to life pursuant to section 667.61, subdivision (b).

B. Discussion
Appellant argues that sentencing him to a term of 15 years to life without notice that one strike sentencing would be sought violated the pleading requirements of section 667.61 and denied him due process.
During the pendency of this appeal, our Supreme Court decided People v. Mancebo (2002) 27 Cal.4th 735, 117 Cal.Rptr.2d 550, 41 P.3d 556 (Mancebo), a case dealing with the pleading requirement of the one strike law. We requested the parties brief the impact of that decision on the present matter. Appellant and respondent agree that Mancebo requires the prosecution to give notice in the charging document when sentencing is sought under the one strike law. They agree no notice was given here. They disagree concerning the effect of that omission.

1. Mancebo

In Mancebo the defendant was charged with one strike crimes involving two victims. As to each of those crimes, the information cited section 667.61 and alleged two circumstances listed in section 667.61, subdivision (e), that if found true required the imposition of terms of 25 years to life under the one strike law. One of those qualifying circumstances was firearm use. (§ 667.61, subd. (e)(4).) The information did not allege as a qualifying circumstance that the crimes were committed against multiple victims (§ 667.61, subd. (e)(5).) As to each of the crimes, the information also alleged firearm use within the meaning of section 12022.5. (Mancebo, supra, 27 Cal.4th at pp. 739-740, 117 Cal. Rptr.2d 550, 41 P.3d 556.)
Mancebo was convicted of the charged crimes and the allegations were found true. Pursuant to the one strike law, the trial court sentenced him to two consecutive 25 years to life terms. To each of those terms the court imposed an additional 10 years based on the section 12022.5 firearm use findings. (Mancebo, supra, 27 Cal.4th at p. 740, 117 Cal.Rptr.2d 550, 41 P.3d 556.) It was the legality of these additions that was at issue in Mancebo.
Section 667.61 contains two pleading and notice provisions relevant to that issue. Section 667.61, subdivision (i), requires that the existence of any fact necessary for one strike sentencing be "alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." Section 667.61, subdivision (f), states that if only the minimum number of qualifying circumstances necessary for sentencing under the one strike law have been "pled and proved," those circumstance must be used to impose sentence pursuant to that law and not to impose punishment under any other law. However, if more than the minimum number of qualifying circumstances have been "pled and proved," they "shall" be used to impose any additional terms authorized by law.
In Mancebo the minimum number of qualifying circumstances necessary to authorize 25 year to life sentencing under the one strike law were pled and proved. Nominally, this would suggest that the fact of firearm usefound true pursuant to the section 12022.5 allegation but neither pled nor proved as a qualifying circumstance for One strike purposescould not be used to support both one strike sentencing and the imposition of a firearm use enhancement.
*548 The trial court, however, concluded that while the multiple victim qualifying circumstance (§ 667.61, subd. (e)(5)) was not pled, it was necessarily proved since the defendant was found guilty of committing qualifying crimes against two victims. The trial court substituted the multiple victim circumstances for the firearm use circumstances as a basis for 25 years to life sentencing under the one strike law and then used the fact of firearm use to impose a section 12022.5 enhancement.
The court in Mancebo found such manipulation violative of the pleading requirements of section 667.61 and of due process. The court concluded it was necessary to read section 667.61, subdivisions (i) and (f) together and that so read their meaning was that qualifying circumstances had to be specifically pled and found. The court described this requirement as "straightforward and plain." (Mancebo, supra, 27 Cal.4th at pp. 743-745, 749, 751, 753, 117 Cal.Rptr.2d 550, 41 P.3d 556.)
Having found error, the court turned to the issue of disposition. It noted that the prosecution understood the express pleading requirements of section 667.61 since it properly pleaded such a case. Rather than undertake a prejudice analysis, the court stated it would deem the prosecution's failure to plead a multiple victim qualifying circumstance a discretionary charging decision. It stated this conclusion was supported not only by the record but also by the failure of the People to suggest how any failure to plead that circumstance was the result of mistake or other excuse. The court stated that under those circumstances the concepts of estoppel and waiver applied and there was no need to assess prejudice. (Mancebo, supra, 27 Cal.4th at p. 749, 117 Cal.Rptr.2d 550, 41 P.3d 556.)
Mancebo recognized that in People v. Knox (1999) 74 Cal.App.4th 757, 88 Cal. Rptr.2d 432 (Knox), the court found a similar pleading error harmless. In Knox the defendant was charged with sex offenses against three victims and placed on notice that the prosecution was seeking one strike sentencing. As to each victim, the information alleged one qualifying circumstance, i.e., firearm use, thus, making the defendant eligible for a sentence of 15 years to life as to each victim. The information did not allege the additional qualifying circumstance that the crimes were committed against multiple victims. Nonetheless, the trial court, noting the jury necessarily found crimes against multiple victims, imposed terms of 25 years to life based on findings of multiple circumstances rather than 15 years to life terms applicable to a finding of a single circumstance. (Mancebo, supra, 27 Cal.4th at pp. 749-750, 117 Cal.Rptr.2d 550, 41 P.3d 556.)
The Knox court found that any failure to plead the additional multiple victim circumstance harmless. It observed that all facts necessary for that finding were pled. It noted there was no suggestion the case would have been defended differently had the additional circumstance been included in the information. It stated the defendant was aware that he was charged with qualifying sex crimes against multiple victims. Finally it noted the jury necessarily found the facts supporting the unpled circumstance, i.e., multiple victims. (Knox, supra, 74 Cal.App.4th at p. 761, 88 Cal. Rptr.2d 432.)
Mancebo rejected and disapproved the Knox analysis. It found "questionable" the conclusion the defendant knew based on the information that he faced a term of 25 years to life rather than 15 years to life. It also noted that Knox, unlike Mancebo, did not involve a violation of the express provisions of section 667.61, subdivision (f).

2. Analysis
The Attorney General argues the Mancebo decision with regard to the issue of *549 disposition was a narrow and limited one. He interprets the opinion as applying the doctrines of waiver and estoppel only to situations where the prosecution demonstrates its understanding that it must give explicit notice that it is seeking one strike sentencing. He contends that when, as in the present case, there is no evidence the prosecution understands this duty and when it provides no notice whatsoever of its intention to seek an indeterminate life term, its omission is amenable to a claim of harmless error.
It would be odd, we think, if the prosecution's tactical position on appeal was improved because its error below was more egregious. We reject the Attorney General's interpretation and conclude based on the concepts of estoppel and waiver as applied in Mancebo that the failure to give notice that one strike sentencing will be sought precludes such sentencing.
The Attorney General believes this case is distinguishable from Mancebo because there the information demonstrated the prosecutor's understanding of the requirement that it give notice it was seeking one strike sentencing, but here the information suggests prosecutorial ignorance. This demonstration of awareness is crucial the Attorney General argues since it is the basis for Mancebo's conclusion that the prosecutor made a charging decision in not pleading the multiple victim qualifying circumstance.
We do not believe Mancebo's observation concerning the prosecutor's general understanding of its pleading requirements in this context was meant as a limitation on the application of the concept of waiver and estoppel. The prosecution's state of mind is surely less important than the effect of its actions. Whether done intentionally or not, the failure to give notice that one strike sentencing or some nuance of one strike sentencing is sought has serious consequences.
As Mancebo notes the failure to give such notice can affect the manner in which the case is defended and, perhaps more importantly, can affect the defendant's position with regard to plea bargaining. (Mancebo, supra, 27 Cal.4th at p. 752, 117 Cal.Rptr.2d 550, 41 P.3d 556.) As the Attorney General notes in his harmless error argument, not only does a failure to give notice have a serious potential for misleading the defendant, it thrusts upon the defendant the burden of demonstrating error and prejudicea burden that may be extremely difficult to meet especially when the claim of prejudice involves the effect of a lack of notice on plea bargaining. (See generally In re Alvernaz (1992) 2 Cal.4th 924, 937, 8 Cal.Rptr.2d 713, 830 P.2d 747.) Of lesser but still meaningful importance is the need to expend judicial resources in what can be a time consuming process of sorting out prejudice. These effects on the defense and the judicial system are unacceptable especially in light of the ease with which they can be avoid by proper pleading.
In deciding the significance of a prosecutor's demonstrated knowledge of pleading requirements to the application of the concepts of waiver and estoppel, we note that the two cases cited by Mancebo in support of its application of those concepts do not suggest such a requirement. The court cites this quotation from People v. Hernandez (1988) 46 Cal.3d 194, 208-209, 249 Cal.Rptr. 850, 757 P.2d 1013: "`It is unnecessary to ... engage in a harmless-error analysis when defendant's due process right to notice is completely violated.' " (Mancebo, supra, 27 Cal.4th at p. 749, 117 Cal.Rptr.2d 550, 41 P.3d 556.)
The court cites this quotation from People v. Najera (1972) 8 Cal.3d 504, 512, 105 Cal.Rptr. 345, 503 P.2d 1353, a case in *550 which the prosecutor failed both to include in the information a section 12022.5 enhancing allegation and to have the jury instructed concerning it: "`We conclude that the People waived application of section [667.61, subdivision (e)(5)] by failing to have the matter resolved at trial'" (Mancebo, supra, 27 Cal.4th at p. 749, 117 Cal.Rptr.2d 550, 41 P.3d 556.)
We conclude that Mancebo's reference to the prosecution's apparent knowledge of the notice requirement was case specific. It was not meant to express a requirement that the prosecution have demonstrated an understanding of the "straightforward and plain" pleading requirement of the one strike law before the concepts of waiver and estoppel would apply.
In this case the amended information, on which this case was tried, the prosecution not only failed to allege the applicability of section 667.61, subdivision (b), it affirmatively alleged the case was a determinate sentencing case. The prosecutor, perhaps gratuitously, set forth in the information the potential penal sanctions arising from each charge and allegation in the amended information. Specifically, he set forth the range of determinate sentences appropriate to each count. For example, under the heading "Sentence Range," the prosecutor listed for count 1 (§ 261, subd. (a)(2)) the numbers "5-7-9," which represent the range of potential years in prison as a determinate sentence for that charge. Each of the remaining counts followed the same pattern. Hence, the inescapable conclusion from the pleadings was that the defendant was not subject to a potential indeterminate sentence.
The trial court and the attorneys for the parties apparently shared this conclusion. During in limine discussions the trial court discussed the number of potential peremptory challenges to the jury. The court said: "And this is not a strike case, so you each get ten challenges." Defense counsel immediately agreed and the prosecutor did not challenge the accuracy of the statement. The jury was then selected on the basis that the defendant was not facing a potential life term.
Indeed, it was not until after the verdict that the prosecutor apparently discovered section 667.61, subdivision (b), was applicable. Prior to sentencing, the prosecutor's first hint he was requesting a life sentence was when he filed Points and Authorities in Support of Imposing the Mandatory Punishment of 15 to Life for Each Defendant Pursuant to P.C. 667.61. The record is entirely clear that the case proceeded completely through trial with no mention of a life term, with specific pleadings alleging otherwise and with acceptance of a judicial declaration that it was a determinate sentencing case. Both adherence to Mancebo, supra, 27 Cal.4th 735, 117 Cal. Rptr.2d 550, 41 P.3d 556, and basic fairness require that we hold the prosecution to its tactical pleading choices. We reverse and remand for resentencing.

V. Ineffective Assistance of Counsel[**]

DISPOSITION
The judgment is reversed. The matter is remanded to the trial court for resentencing. The petition for writ of habeas corpus is denied.
WE CONCUR: HUFFMAN and HALLER, JJ.
NOTES
[1] Under California Rules of Court, rules 976(b) and 976.1, only the Introduction, Facts, Discussion part IV and the Disposition are certified for publication.
[*] The Supreme Court ordered that the opinion be not officially published. (See California Rules of Court Rules 976 and 977.)
[2] Appellant was sentenced to an additional consecutive three years in two unrelated cases that were combined with this case for sentencing purposes.
[3] AH further statutory references are to the Penal Code unless otherwise specified.
[4] Soltero is not a party to this appeal.
[*] See footnote *, ante.
[**] See footnote *, ante.