Filed 2/24/14 P. v. Benavidez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWARD BENAVIDEZ,<br><br>    Defendant and Appellant. | B245424<br><br>(Los Angeles County<br>Super. Ct. No. NA082281) |

APPEAL from a judgment of the Superior Court of Los Angeles County. James B. Pierce, Judge. Affirmed as modified.

Carla Castillo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Edward Benavidez of first degree murder (Pen. Code, §187, subd. (a))[1] (count 1), attempted willful, deliberate, premeditated murder (§§ 664/187, subd. (a)) (count 2), and possession of a firearm by a felon (§ 12021, subd. (a)(1)) (count 3). The jury found as to all counts that the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members within the meaning of section 186.22, subdivision (b)(1)(C). With respect to count 1, the jury found that defendant personally and intentionally discharged a firearm causing great bodily injury and death within the meaning of section 12022.53, subdivision (d). In count 2, the jury found that defendant personally used a firearm (§ 12022.53, subd. (b)) and that he personally and intentionally discharged a firearm (§ 12022.53, subd. (c)). Defendant admitted an allegation that he had suffered a prior prison term within the meaning of section 667.5, subdivision (b).

The trial court sentenced defendant to a total term of 90 years to life. The sentence consisted of 25 years to life for the murder in count 1 plus 25 years to life for the firearm enhancement in that count. In count 2, the court imposed 15 years to life plus an additional 25 years to life for the firearm enhancement in that count. The court stayed the sentence in count 3 pursuant to section 654. The court struck the section 667.5, subdivision (b) enhancement.

Defendant appeals on the grounds that: (1) the imposition of a 25-years-to-life sentence for the firearm use enhancement in count 2 violated California law and his right to a jury trial; and (2) the trial court erroneously under-calculated his credit days by 300 days. Respondent contends that the abstract of judgment must be amended to show court security fees of $120 pursuant to section 1465.8, subdivision (a)(1).

---

[1] All further references to statutes are to the Penal Code.

## FACTS

Since defendant's issues on appeal relate only to sentencing, we briefly summarize the pertinent facts in the light most favorable to the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) On June 4, 2009, brothers Daniel and Jose Castro were in the area of 242 West 2nd Street in San Pedro. They were visiting their mother, who had recently moved there. Jose was not a gang member.[2] As Jose and Daniel were walking from Daniel's car toward their mother's home, someone across the street yelled at them and told them to identify themselves. A man wearing a white tank top and wearing a "spongy" ponytail, later identified as defendant, walked toward Jose and Daniel. He was accompanied by a Hispanic woman. Defendant aggressively asked Jose and Daniel where they were from, which meant what gang were they from. Defendant said that his name was "Tank," he was from the Rancho San Pedro (RSP) gang, and he was "pretty much . . . the big shot" around the neighborhood.

Jose told defendant that they were there visiting their mother so that defendant would understand they were not there to cause problems. When he said they were from Los Angeles, the Hispanic woman said, "This is RSP, and we don't care, and we don't like L.A. people."

During their 20-minute conversation, defendant was drinking out of a Coke bottle, and Jose pulled out a cigarette. Defendant asked Daniel if he wanted to join the RSP gang. Jose tried to change the conversation, but defendant kept redirecting the conversation toward Daniel. Jose got mad and said, "Don't talk to him anymore. If you have anything to say, you say it to me, and I'll correct him in the house." Jose was so frustrated with the conversation that he lit the wrong end of his cigarette. He flipped it around and lit it correctly. Defendant asked for a puff on Jose's cigarette and ended up finishing it.

---

[2]     The parties stipulated that Daniel was convicted of being a gang member with a gun on May 9, 2007, and was sentenced to 40 months in prison.

3

Jose finally told Daniel that it was time to go home. Defendant said, "Yeah, he's right. Listen to your big brother. You guys should go home." As Jose and Daniel walked toward their mother's house, defendant and the Hispanic woman walked in the opposite direction. Jose and Daniel went inside. Approximately one minute later, Jose went outside to smoke another cigarette, and Daniel said he wanted to go with him. Defendant came out from a walkway and started shooting at Jose and Daniel.

Jose ran toward 2nd Street, and Daniel ran toward the apartment. Defendant shot three times at Daniel and turned the gun on Jose, whom he shot at twice. Jose crouched behind a car. Jose heard the gun clicking and came out from behind the car. Defendant still pointed the gun at Jose and was squeezing the trigger. Jose told defendant "put the gun down, and let's fight like men." When Jose "jerked" his body as if he were going to run after defendant, defendant ran away. Jose was not shot.

Jose returned to his mother's house to find her holding Daniel outside on the porch. The deputy medical examiner who performed the autopsy on Daniel determined that he died as a result of a gunshot wound to the back.

Three witnesses testified that they heard the argument between defendant, his female friend and the Castro brothers, and then heard shots. They identified defendant in a photographic lineup. A fourth witness heard gunshots and saw a man running with a gun. The gunman tried to fire again, but the gun did not fire. The gunman had a tank top and ponytail. A fifth witness heard defendant yell, "This is my projects" before jumping in a car. The witness identified defendant in a photographic lineup but claimed at trial that she was forced to do so, which the interviewing detective denied.

Detective David Cortez of the Los Angeles Police Department (LAPD) arrived at the crime scene and asked Jose to show him the direction in which defendant ran. Jose pointed out to detectives the cigarette butt, burned at both ends, from the cigarette that he had given defendant. Detective Cortez collected the cigarette butt and two Coke bottles. He also found a live, .38-caliber bullet about 20 feet west of the victim's clothing.

At approximately 5:45 a.m. on the following morning, LAPD Officer Robert Castruita was conducting surveillance at an apartment complex in San Pedro. He

4

observed defendant walk into the apartment complex at that location. At approximately 6:30 that morning, the defendant was ordered to come out of the location.

Officer Castruita worked with the Gang Enforcement Detail, assigned to the RSP gang. RSP claimed the City of San Pedro, including the Rancho San Pedro Housing Complex. He testified to the primary activities of the gang and to prior felony convictions of gang members. Defendant admitted to being an RSP gang member to Officer Castruita and other officers. His moniker is "Tank." Officer Castruita believed that the murder and attempted murder in this case were committed for the benefit of the RSP gang. The parties stipulated that defendant had been convicted of a felony on April 6, 2006.

Detective Cortez obtained a sample of defendant's DNA. Three people, including defendant, contributed to the DNA found on one of the Coke bottles. One in 89 individuals would exhibit a combination of genetic markers in the mixture profile. Two males, including defendant, contributed to the DNA found on the cigarette butt. Approximately one in 314,300 individuals would exhibit some combination of genetic markers included in the mixture.

## DISCUSSION

### I. Firearm Enhancement in Count 2

Defendant points out that in count 2, the attempted murder, the jury was only asked to determine whether defendant personally used a firearm (§ 12022.53, subd. (b)), which carries a sentence of 10 years, and personally discharged a firearm (§ 12022.53, subd. (c)), which carries a sentence of 20 years. The jury was not asked and did not find that defendant discharged a firearm causing great bodily injury or death within the meaning of section 12022.53, subdivision (d), which carries a sentence of 25 years to life. Therefore, the sentence of 25 years to life that the trial court imposed for the firearm enhancement in count 2 was unlawful and must be stricken. In its place, defendant states, this court can order the imposition of a 20-year consecutive term, since the jury properly found that defendant personally discharged a firearm pursuant to section 12022.53, subdivision (c). Respondent agrees, as does this court.

5

"Punishment for a firearm-use enhancement may be imposed only if the trier of fact finds the enhancement allegation to be true. Section 12022.53, subdivision (j), provides: 'For the penalties in this section to apply, the existence of any fact required . . . shall be alleged in the information or indictment and either admitted by the defendant in open court or found to be true by the trier of fact.'" (*People v. Chambers* (2002) 104 Cal.App.4th 1047, 1049; see also *People v. Najera* (1972) 8 Cal.3d 504, 510, disapproved on another ground in *People v. Wiley* (1995) 9 Cal. 4th 580, 587-588 [firearm enhancement requires a jury determination of the factual question whether or not defendant used a firearm in the commission of the underlying offense unless defendant waived a jury trial or pleaded guilty].) Because the jury did not find the enhancement under section 12022.53, subdivision (d) to be true, the enhancement must be stricken, and the enhancement under section 12022.53, subdivision (c) imposed. An unauthorized sentence may be corrected at any time regardless of whether an objection was made in the trial court. (*People v. Smith* (2001) 24 Cal.4th 849, 854.)

## II. Credits

Defendant argues that the trial court erred in awarding only 757 days of actual credit. He asserts that he was arrested on June 4, 2009, and sentenced on April 25, 2012. Therefore, he was in custody for 1,057 days and the abstract of judgment must be corrected to reflect this number.

The record shows that defendant was arrested on June 5, 2009, the morning after the shooting. He was sentenced on April 25, 2012. Therefore he is entitled to 1,056 days of actual custody credit.

Respondent argues that this claim is barred because defendant did not first present the issue to the trial court. Respondent acknowledges that *People v. Acosta* (1996) 48 Cal.App.4th 411, 427 (*Acosta*), held that section 1237.1 does not require a defendant to first raise a credits issue in the superior court when the defendant has raised other issues on appeal. Respondent asserts that such an interpretation has no support in the language of the statute.

6

The California Supreme Court has stated that, "[b]y its terms, section 1237.1 bars a defendant . . . from taking an appeal as to any such question unless he has first presented it to the superior court . . . . By implication, and a fortiori, it allows, if not requires, the Court of Appeal to decline to address a question of this sort unless he has complied. . . . *People v. Acosta*, *supra*, 48 Cal. App. 4th 411—on whose reasoning and result we need not, and do not, pass . . .—is not to the contrary. It holds no more than that the Court of Appeal *may* address a question of this sort *if* it is properly presented with others as well. It does not even suggest that the Court of Appeal *must* do so, especially when, as here, it finds that that condition is not satisfied." (*People v. Mendez* (1999) 19 Cal.4th 1084, 1100-1101.) In *Mendez*, the other issues were not "properly presented" because Mendez's appeal followed a guilty plea, and he had not obtained a certificate of probable cause. The credits issue was the only non-certificate issue, and the appellant had not raised it until his reply brief. (*Id.* at pp. 1091-1092.)

We believe that in the instant case, where the record is clear and at least one other issue has been properly raised, judicial economy is well served by amending the abstract of judgment on appeal. There is no indication that defendant was out of custody at any time after his arrest. On the day the probation report was prepared (March 20, 2012), the probation officer estimated that defendant had been in custody approximately 1,021 days. Defense counsel, who gave the trial court the number of actual days, was clearly mistaken. We see no reason to refuse to follow *Acosta*.

## III. Court Security Fees

In addition to other fines, defendant was ordered to pay a $40 court security fee pursuant to section 1465.8, subdivision (a)(1).

As respondent asserts, a court security fee must be imposed on each conviction. Section 1465.8, subdivision (a)(1) provides: "(a)(1) To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense, including a traffic offense, except parking offenses as defined in subdivision (i) of Section 1463, involving a violation of a section of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code."

7

"[S]ection 1465.8 unambiguously requires a fee to be imposed for each of defendant's convictions.  Under this statute, a court security fee attaches to 'every conviction for a criminal offense,'" regardless of whether any of the convictions were stayed under section 654.  (*People v. Schoeb* (2005) 132 Cal.App.4th 861, 865; *People v. Crittle* (2007) 154 Cal.App.4th 368, 370-371 [§ 654 does not apply to a court security fee because that fee is not punishment].)  Therefore this portion of defendant's sentence is also unauthorized, and the sentence must be modified accordingly.  (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

## DISPOSITION

The judgment is modified to strike the 25-years-to-life enhancement under section 12022.53, subdivision (d) in count 2 and to impose an enhancement of 20 years under section 12022.53, subdivision (c ), resulting in a sentence of 15 years to life plus 20 years in count 2.  Defendant's total sentence is 65 years to life plus 20 years. The judgment is modified to grant defendant 1,056 days of custody credit and to impose court security fees totaling $120 instead of $40.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

_____

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.